UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Yajaira V. Crespo

_____

_____

Write the full name of each plaintiff.

\_\_\_\_\_CV_____
(Include case number if one has been assigned)

-against-

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

_____

Do you want a jury trial?

☒ Yes    ☐ No

_____

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

# EMPLOYMENT DISCRIMINATION COMPLAINT

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 3/24/17

## I.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Yajaira | V | Crespo |
|---|---|---|
| First Name | Middle Initial | Last Name |

| 309 Surf Drive | | |
|---|---|---|
| Street Address | | |

| Bronx | NY | 10473 |
|---|---|---|
| County, City | State | Zip Code |

| 718-207-0775 | kyla.korner@gmail.com |
|---|---|
| Telephone Number | Email Address (if available) |

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

| Kramer Levin Naftalis & Frankel LLP | | |
|---|---|---|
| Name | | |
| 1177 Avenue of the Americas | | |
| Address where defendant may be served | | |
| New York | NY | 10036 |
| County, City | State | Zip Code |

Defendant 2:

| | | |
|---|---|---|
| Name | | |
| | | |
| Address where defendant may be served | | |
| | | |
| County, City | State | Zip Code |

Defendant 3:

| | |
|---|---|
| Name | |

Address where defendant may be served

| County, City | State | Zip Code |
|---|---|---|

## II.   PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

Kramer Levin Naftalis & Frankel LLP

Name

1177 Avenue of the Americas

Address

| New York | NY | 10036 |
|---|---|---|
| County, City | State | Zip Code |

## III.   CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☒  race:  _I am attaching the supporting information and explanation_

☒  color:  _I am attaching the supporting information and explanation_

☐  religion:  _____

☒  sex:  _I am attaching the supporting information and explanation_

☒  national origin:  _I am attaching the supporting information and explanation_

☒ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: **Dominican American**

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B. Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.   STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☒ terminated my employment
- ☐ did not promote me
- ☐ did not accommodate my disability
- ☒ provided me with terms and conditions of employment different from those of similar employees
- ☒ retaliated against me
- ☒ harassed me or created a hostile work environment
- ☒ other (specify):   Lied about the facts and said that I made careless errors that were made by a colleque.

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

The EEOC sent me the right to sue letter to commence a Federal and State court case against Kramer which is attached along with an explanation of what occurred, the Verified complaint filed with the EEOC, the responses from my former attorney and my supporting evidence. I was harrassed, tormented, and then improperly terminated for wanting to celebrate Juneteenth. HR never assisted me with the issues I reported and the Partners didn't reprimand my Supervisor whom they wanted me to shadow.  He made several careless errors that I was able to prove were his doing and done before I commenced my employment yet they lied to the EEOC and said that I did these things. It was an extremely hostile work environment and it has been in that Real Estate Closing Department for many years.  They give one person preferential treatment and everyone else is penalized if they are not in agreement.

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

    ☒  Yes (Please attach a copy of the charge to this complaint.)

        When did you file your charge?  In 2021 (copy attached)

    ☐  No

Have you received a Notice of Right to Sue from the EEOC?

    ☒  Yes (Please attach a copy of the Notice of Right to Sue.)

        What is the date on the Notice?  5/22/2023

        When did you receive the Notice?  5/30/2023

    ☐  No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

    ☐  direct the defendant to hire me

    ☐  direct the defendant to re-employ me

    ☐  direct the defendant to promote me

    ☐  direct the defendant to reasonably accommodate my religion

    ☐  direct the defendant to reasonably accommodate my disability

    ☒  direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

Yes.  I was wronged and left my secure job of 9 years to be disrespected by Kramer and I would like 2 years salary and $200,000 for emotional and mental distress.  I'm not sure if they hired me to temporarily fill in for a pregnant Paralegal while she was on maternity leave but they never did a write up on me and never advised that there were issues with my work performance.  I was terminated and offered a separation agreement that I didn't sign.  The agreement is offering me a month's salary if I remain silent and agree to be blacklisted which is extremely upsetting.

## VII.  PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | | |
|---|---|---|
| 8/17/23 | | Yajaira V. Crespo |
| Dated | | Plaintiff's Signature |
| Yajaira | V | Crespo |
| First Name | Middle Initial | Last Name |
| 309 Surf Drive | | |
| Street Address | | |
| Bronx | NY | 10473 |
| County, City | State | Zip Code |
| 718-207-0775 | kyla.korner@gmail.com | |
| Telephone Number | Email Address (if available) | |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes    ☐ No

   If you do consent to receive documents electronically, submit the completed form with your
   complaint. If you do not consent, please do not attach the form.



**United States District Court
Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

| | |
|---|---|
| Crespo, Yajaira V | |
| Name (Last, First, MI) | |

| | | | |
|---|---|---|---|
| 309 Surf Drive | | NY | 10473 |
| Address | City | State | Zip Code |
| 718-207-0775 | | kyla.korner@gmail.com | |
| Telephone Number | | E-mail Address | |
| 8/17/2023 | | Yajaira V. Crespo | |
| Date | | Signature | |

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

YAJAIRA V. CRESPO

309 SURF DRIVE

BRONX, NY 10473

CELL: 718-207-0775

EMAIL: KYLA.KORNER@GMAIL.COM

August 11, 2023

Via Email .

Re:  Kramer, Levin, Naftalis & Frankel LLP

Greetings,

Thank you in advance for your attention to the attached
complaint.  I'd like to have this matter resolved so that I can
move on with my life.  The charge to the EEOC and their
letters stating that I can proceed with a Federal and State
Court Filing are attached along with a summary of what
transpired that was sent to my former attorney, emails and
other supporting documents.   Kramer lied and denied all of
the charges and they were caught in multiple lies, yet
somehow the EEOC could not complete their review in a
timely manner due to COVID. I am aware that they do a lot of
pro-bono work in multiple Agencies and that they have allies
in all areas, but I was wronged and I will not walk away
without a resolution that will make me whole.  They offered

me a job and I left my employer of 9 years to work for them. I'm not sure if I was just a fill in for the Pamela who is one of the paralegals that went out on maternity OR if I was terminated because I had to step in to handle Michael's portfolio and uncovered that he wasn't following protocols and there were a lot of mishaps that luckily we were able to work through. I was wrongfully terminated for refusing to work on Juneteenth and was never written up.

I hope that the information is clear but if additional information is required, please feel free to contact me via cell or email. I am still employed at AKAM which is where I became employed after being improperly terminated. AKAM is affiliated with Kramer since it's a major Real Estate Management Firm. Kindly review the agreement that they sent me shortly after termination offering me a month's salary for my silence and for my consent to be blacklisted.

The culture historically for years in the Real Estate Department at Kramer has been toxic because Michael is given preferential treatment and ALL of the paralegals have always had issues with him. I imagine that this is still going on today. I was warned by the other paralegals daily to be careful with Michael and they were disgusted at how I was being treated.

I was made to meet with Jonathan (Senior Partner) every Friday and did so every single week.

This has been a really disrespectful situation and they violated me in so many ways: Discrimination, Harassment and Retaliation.

**Below is the contact names and information for the Closing Coordinator, Other Senior Paralegal and other Paralegals so that you can contact them for interviews:**

1. Pamela Sausaitis C#347-854-5175 (no longer with the firm)

2. Meryl Goldberg C#917-378-2888 or email: meryl1230@gmail.com  (Senior Paralegal – no longer with the firm but is a key witness)

3. Dana Holton-Paralegal C#917-771-5227

4. Shireen Kay Famanila C#201-885-0857  (Closing Coordinator)

5. Rosa Stanley-Paralegal (I didn't work with her while at Kramer but did a deal with her after while at AKAM).

Thank you for your time!

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 05/22/2023

**To:** Yajaira Crespo
309 Surf Drive
Bronx, NY 10473

Charge No: 16F-2021-00032

EEOC Representative and email:     TIMOTHY RIERA
Deputy Director
TIMOTHY.RIERA@EEOC.GOV

## DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
05/22/2023
Timothy Riera
Acting District Director

CITY OF NEW YORK
COMMISSION ON HUMAN RIGHTS

In the Matter of the Complaint of:

YAJAIRA CRESPO,

          Complainant,

     - against -

KRAMER LEVIN NAFTALIS &
FRANKEL, LLP

          Respondent.

Complaint No.:  M-E-RS-21-90340-E
Federal Charge No.: 16F-2021-00032C

NOTICE OF ADMINISTRATIVE
CLOSURE

**PLEASE TAKE NOTICE** that pursuant to § 8-113(a)(5) of the Administrative Code of the City of New York and Rule 1-22(a)(5) of the Rules of Practice of the City Commission on Human Rights the above-captioned case is hereby closed for administrative cause. This closure does not affect the right of aggrieved parties to file a civil action pursuant to § 8-502 of the Administrative Code of the City of New York.

Pursuant to § 8-113(f) of the Administrative Code of the City of New York and Rule 1-23 of the Rules of Practice a complainant or respondent may apply to the Office of the Chairperson for review of this closure. The request for review must be made in writing within thirty (30) days of service of this order. A copy of the request must be sent to all parties to the complaint and addressed to the Office of General Counsel, New York City Commission on Human Rights, 22 Reade Street, New York, NY 10007. The Office of General Counsel will refer the request to the Office of the Chairperson.

Dated:   March 29, 2023
        New York, NY

Notice To:

Katherine Gabriel
*Counsel for Complainant*
katherine@wyattlegalservices.com

Izabel McDonald
*Counsel for Respondent*
imcdonald@kramerlevin.com

Sapna V. Raj
Deputy Commissioner
Law Enforcement Bureau
New York City Commission on Human Rights

**Yajaira Crespo**

| | |
|---|---|
| **From:** | Yajaira Crespo <kyla.korner@gmail.com> |
| **Sent:** | Monday, August 7, 2023 10:57 PM |
| **To:** | Yajaira Crespo |
| **Subject:** | Fwd: Confidential Treatment Requested- To Be Shared with the Opposing Side only IF my Attorney Deems It Necessary and Appropriate |

External Message - Please be cautious when opening links or attachments in email.

---------- Forwarded message ---------
From: **Yajaira Crespo** <kyla.korner@gmail.com>
Date: Wed, Jan 6, 2021 at 10:34 AM
Subject: Confidential Treatment Requested- To Be Shared with the Opposing Side only IF my Attorney Deems It Necessary and Appropriate
To: Josie Fernandez-Andersen <josie@wyattlegalservices.com>, Katherine Gabriel <katherine@wyattlegalservices.com>

Good Morning,

In preparation for today's 1pm call, please note that I have read the response from Kramer ad would like to note the following:

- There are several emails within my possession that will be outlined and discussed within this response. I also have the phone records for all cell phone and home calls received and sent from COVID through termination.

  o You will see that Michael Wefels (Senior Paralegal) called me as per my email to Shereen Kay Famanila (Closing Coordinator) dated Monday, June 15, 2020.
  o I have the journals as well of all entries for all work and meetings attended and can verify that their response indicating that I often missed meetings is simply not true. I sent Jonathan Canter (Senior Department Partner) an email to confirm that I had meetings scheduled on the calendar followed by cancelled notices. Others said that they were not aware of the meetings due to that discrepancy showing both noted on our calendars. I may have missed one or two meetings but that was at the very beginning of COVID, but again, I was not the only one.

  ▪ Throughout my tenure, on many occasions, Michael, Meryl Goldberg (Senior Paralegal) and Dana Holton (Paralegal) were not present for many zoom calls.
    ▪ Kindly refer to Shereen's June 18, 2020 email to: Michael, Meryl, Dana at 11:04am with Pamela and I being cc'd. In this email, Shereen is confirming that **JHC** (Jonathan Canter) asked for housekeeping to be done specifically on PSAs.
    ▪ Julia sent two lengthy emails about the fact that the PSAs were not on a shareable drive and that procedurally, the Paralegals didn't follow the same work guidelines.
      ▪ Kindly note that the only Paralegal that did not save the Assignments, PSA (Purchase Agreements) and Deal Sheets to the L Drive was Michael.
        ▪ For Meryl and Dana, this was standard and a must and they trained me to always upload each into the shareable L Drive for access by all.
        ▪ Michael often was not reachable and we could not locate the PSAs or Deal Sheets.

1

- o   My understanding is that he's had issues with every female over the years and that they just left because they expressed that no one would listen to their complaints.
- o   It was very clear that Michael was the favorite. Evidence is the fact that he has his own office that is built with two people.
- o
- o   **There were 6 females in our office space:** Shereen (Closing Coordinator), four Residential Real Estate Paralegals: Myself, Meryl, Pamela and Dana, and one Commercial Real Estate Paralegal , Andrea Santiago.
   - ▪   When I started in January, I asked why Michael is in a two person office alone and why he was not seated in our space especially as a fellow Residential Paralegal. I was told it was a Boys Club decision that was not well received by the rest of the Paralegals.
- o   Michael called me "Arroz con Pollo" one morning while in the office. I asked him why he called me "Chicken and Rice" and he laughed if off.
- o   Another time, he said that Jay Z was too Ugly for Beyonce and that he looked like a Monkey with his wide nose and big lips. I immediately took offense because my son is half black and so is my boyfriend. I told him that his comments were inappropriate and he laughed that off too.

- •   During his most recent return from medical leave, he removed me from every communication for the first 3 days. I had no idea what was taking place with his files. That was problematic because the parties involved knew that I was working with him and they would reach out to me and I was not able to provide an update or see Michael's responses.
- •   During my initial in office time (before COVID), I would often be asked by Tzvi (Partner) to go to his client's office to notarize signatures. He would give me cash for the cab rides.
- •   **None of my closings went bust. I was covering million dollar closings and successfully closing them all before and after COVID. Several emails were sent congratulating me on a job well done. I received these emails from team members as well as from outside parties involved.**

   - o   **During my tenure, I handled two outside closings (before COVID). One was for a Partner in another division, Jason Moff. Please see a copy of the Starbucks gift card emailed to me by Jason with his kind words of gratitude.**
   - o   **I also assisted on two remote closings for two other Partners: Daniel Rudder and Eitan Tabak. An email was sent afterwards to the Managing Partners about how professional, knowledgeable and helpful I was during the transaction. He also said that I was a great additition to the team.**

- •   In the midst of Black Lives Matter, I was discriminated against. I have the call log and email about the June 15 call from Michael advising me that since Juneteenth is not a real holiday, he is not adjourning those two closings and that I would need to do them because he was taking the day off. Please note that after COVID, Michael has never allowed me to handle any of his closings unless he was out on medical leave at which point he had no choice. I volunteered to cover for him and created Waterline Notes specifically for the process for that building since it was unique in that a Quit Claim Deed and two sets of ACRIS documents are required. I circulated this information as well since the other Paralegals: Meryl, Dana and Pamela were not aware of the steps required for this property.

   - o   I refused to work on Juneteenth and was therefore terminated the day before.

4

- I am also appalled that Josh Winefsky would say that I didn't tell him that Michael was not cooperating with Jonathan's constant demand.
- I have an email from Deirdre sent on May 19 after she called me to say that she was waiting for Michael to get back to her and she's going to send an email to us to see if he needs me to help out. Her email says "Adding Yajaira on in case you need help." Michael responded and said "I will definetly let you know if I need help." I responded and advised that I was available if needed.
- Email dated June 15, 2020 email to Shereen asking if she has the PSA for 1WS#27C (after emailing Michael on it on June 12). In that email, I asked if she had time to go over her routine so that I know what to do when she's on maternity leave. As a Closing Coordinator, she has specific job duties that the team didn't know how to perform. She went on vacation to the Phillipines and all work and files were left for her to do in two weeks upon her return. I wanted to be proactive and help the team during her maternity leave of several months.
- Email dated May 27 to the team in which Jonathan, Julia, Josh and Pamela are discussing the escrow letter and that Michael's master was incorrect to begin with. Jonathan then asks Michael to update the master form (via email). The order of the documents were incorrectly listed in Michael's master.
- Email to Michael on June 3 at 5:12pm telling him that I'll be working until 6:30-7pm and not to forget about me.
- Email to Michael on Monday, June 8, 2020 advising that the PSA for 2WS #21A was not on the L Drive and that I needed it to prepare ACRIS.
- Email to Michael on Wednesday, June 17 at 11:55am, advising that the PSA for 2WS Unit #25B was not on the L Drive and that it was closing on 6/22.
- Email to Michael on Tuesday, June 9 at 11:34am following up on the closing statement review that I needed from him for 1WS#28A and 1WS#28D so that I can release them to the parties. At 4:28pm, he responds telling me that he didn't review but I should release the statements. Please see the email chain in which I advise him that I would feel more comfortable if he reviewed them first.
- Email to Michael on Wednesday, June 10 at 11:23am advising that our Client's Executive Assistant, Emily, was following up to find out if he received the executed escrow letter back for the Friday, June 12th closing.

    - I often followed up w/Emily via tex, calls and emails for closing documents.
        - Josh's statement that closing documents were being released without ample time is correct. However, we discovered during one of Michael's medical absences that he was releasing closing documents without having fully executed escrow letters. That is what prompted Josh's email about escrow agreements and why we must not release original client documents unless this was received. Unfortunetly, what we discovered is that Michael had 4 closings and only one signed executed agreement back. The original documents had been released which was a major liability. Michael released the documents.

- Closing calender to team sent by Shereen as procedure (that includes the entire team) advising that on Monday, 6/15/2020, Michael had 5 closings listed.

    - Please note that no other Real Estate Paralegal during my tenure ever had more than two closings in one day. Anything over 2 is extreme.
    - I sent Michael an email that morning asking him to let me know if he needs me to assist with any of the closings.   Please note that I often sent emails asking if he needed my help.
    - I also sent various emails to the team to advise that I was available.
        - Jay admitted during the phone call with Cindy that he did see my emails to the team.

- See email from Pamela on June 15 confirming that I can provide coverage for her on Friday, November 20.
- I did send Michael an email thanking him for mentoring me but that was because that day he called me for the first time and spoke with me for about 40 minutes to go over closing statements and provide training. I thought that Jonathan finally got through to him. I thought that finally the mistreatment at this all Boys Club as the Females in the Department called it was finally over. They often commented on their disgust with the Boys Club mentality in the Real Estate Department.

- Within 2 minutes at 11:06am, I responded to Shereen's email to confirm that it was in fact today's request and that if anyone needed help to please advise.
- This was an issue raised by me and others often during our zoom calls with the team.
- There were usually two zoom calls per week and in my journal entries, I have all of the ones that I attended logged in and can provided the confirmation upon request. At these meetings the hosts (usually Jonathan and Jay Neveloff (Head of the Entire Real Estate Department) would go around to each of us to find out if there was anything that needed to be discussed. Whenever I bought up an issue, the other women often chimed in to say that they too were not aware of a status update, or Assignment or PSA or deal sheet information whenever Michael was handling a file because he would not share the information and saved all of his information on his desktop. The other women that expressed issues during our joint zoom meetings or while covering for one of his closings were: Nicole DeBare (Special Counsel) , Julia L. Wachter (Special Counsel), Deirdre Heffernan (Associate), Meryl, Dana and Pamela (Paralegals).

- Please note that I was not paid by Kramer through June 18 which was my termination date. I also did not get approved for OT (Overtime) that I sent to Jonathan for approval.
- I did volunteer for many KL events and meetings because I had so much non-billable hours.  They asked for volunteers for many great initiatives.
    - The work was not equally distributed.  Michael was the lead, followed by Meryl then Dana.
        - Dana and Meryl gave me a few administrative things to do which was a great learning experience but I didn't know what transpired from beginning to end since I was often asked to help with files already in progress.  There were many steps and I was asked to do a step by step manual for training future paralegals.  I emailed the manual to the team: Dana, Meryl, Michael, Andrea, Jonathan, Pamela, Shereen and Josh on Monday, June 1, 2020 (see attached email confirming 13 attachments sent at 11:13am. The responses from the team thanking me are also attached.  I forgot to include Jay and emailed him shortly after so that he also had a copy of the notes.
        - I was made to wait for work.  Most times, Meryl and Dana would give me a few hours of work but they knew that Michael's assignment of duties took priority over any of their work.  That was reiterated to me by Jonathan and I always responded that I was ready and constantly following up with Michael for work.
        - 
        - Email to Dan Berman who is a Partner on June 16,  advising that I'd like to assist in the initiatives that he briefly discussed that mornin. I also advised that I signed up for the Veteran's initiative.
        - Email to Eva and Colin about participating in the NYC Business Solutions - Small Business Clinic.

- I was asked to attend weekly check ins with Jonathan (Before COVID) about how my training with Michael was going. I am appalled that he would now dispute that this took place as everyone knew that It occurred once a week. I often chatted with his assistant while I waited for permission to enter his office.

    - One time, I responded to an email from Jonathan and said that I needed him to help me because keeps telling me that he's too busy to train with me.
    - Jonathan insisted that I shadow Michael.

2

CITY OF NEW YORK

COMMISSION ON HUMAN RIGHTS

------------------------------------------------x

In the Matter of the Complaint of:

                    **Yajaira Crespo**
                    **309 Surf Drive**
                    **Bronx, NY 10473**
                    Complainant,

      -against-

                    **Kramer Levin Naftalis & Frankel LLP**
                    **1177 Avenue of the Americas**
                    **New York, NY 10036**
                    Respondent.

------------------------------------------------x

Verified Complaint

Case No. M-E-RS-21-90340-E

Federal Charge #: 16F-2021-00032C

Particulars for the Discrimination Charge of Yajaira Crespo

1) My name is Yajaira Crespo and I am an African American and Hispanic woman.

2) On or around January 6, 2020, I was hired by Kramer Levin Naftalis & Frankel LLP (the "Company") as a paralegal in New York, NY.

3) At all relevant times, the Company employed 15 or more employees during 20 or more weeks within the current or preceding calendar years.

4) At all relevant times, I was a qualified employee and my job performance was satisfactory.

5) From the time I started with the Company, I started to be treated in a discriminatory manner by my supervisor Michael Wefels ("Wefels").

6) Wefels is a Caucasian male.

7) My work at the Company involved working on procedures for real estate closings and how to manage my supervising attorney's portfolio, which Wefels was supposed to train and supervise me on.

8) However, when I approached Wefels with questions Wefels wound not talk to me, even to address minor questions.

9) Wefels did not treat non-African American, non-Hispanic and/or male employees in the same manner.

10) Despite this lack of training, I was assigned to conduct real estate closings due to the confidence of the Company in my performance.

11) However, I suspected Wefels was treating me differently because of my race and/or gender.

12) Accordingly, I approached the managing partner Johnathan Canter ("Canter") and raised protected concerns that Wefels was treating me differently due to my race and/or gender.

13) Canter is a Caucasian male.

14) Canter refused to address my protected concerns, stating that I just had to deal with Wefels' discriminatory behavior.

15) I continued to raise protected concerns about Wefels' discriminatory behavior to Canter, but nothing was ever done to address any of my protected concerns.

16) On or around late February 2020, despite Wefels' lack of training, I was assigned to make an information guide for Wefels' portfolio to aid in the process of all his closings.

17) In or around March 19, 2020, the COVID-19 pandemic became widespread.

18) As a result, the entire office began to work from home.

19) To keep in contact with Wefels, I would email and call him, but he would never respond to any of my emails or the numerous voicemails I would leave for him.

20) In or around the beginning of April 2020, I was again forced to cover Wefels' real estate closings while he was out of office.

21) However, due to a mistake on the part of Wefels, three closings were missing an escrow letter, a task that would be under Wefels' purview.

22) Despite the fact the mistake was not mine (and, indeed, was that of the Caucasian Wefels), Managing partner Josh Winesky ("Winesky") approached me and reprimanded me for this mistake.

23) Winesky is a Caucasian male.

24) Shocked, as I was covering Wefels' workload with no training, I raised protected concerns to Winesky that this reprimand was only due to my race and/or gender.

25) Winesky ignored my protected concerns.

26) In or around the middle of April 2020, during a Zoom meeting between the paralegals for the Company, I was informed that other female paralegals were also not getting information from Wefels when they asked and were also being met with no response.

27) As such, I again raised protected concerns to Canter that Wefels was treating me differently to my race and/or gender, as were other paralegals.

28) Canter continued to ignore my protected concerns, despite the fact that Wefels was causing harm to myself and other females in the Company through his discriminatory actions.

29) In or around June 15, 2020, there was an email sent to all staff declaring Juneteenth an office holiday for those who wanted to take the day off.

30) Juneteenth is a holiday celebrating the emancipation of those African Americans who were enslaved in the United States.

31) Juneteenth is an important holiday for me as it celebrates African American heritage.

32) As such, I approached Wefels and requested Juneteenth, or June 19, 2020, off to celebrate my African American heritage.

33) Wefels denied my request, forced me to do closings, saying that "Juneteenth was not an actual holiday."

34) Shocked, I raised protected concerns that by denying this day off, Wefels was discriminating against me because of my race in not allowing me celebrate Juneteenth and by treating me differently due to my gender.

35) Wefels ignored my protected concerns.

36) In or around June 18, 2020, I had a Zoom meeting with Canter where I again raised protected concerns that Wefels was treating me differently due to my race and/or gender, including by noting that Wefels was not giving me necessary documentation and denying my request to take Juneteenth off to celebrate my African American heritage.

37) During this call, Cantor also asked me if I was assisting Wefels on his closings.

38) To this question from Cantor, I raised protected concerns that Wefels was again not letting me see any of his work and would not let me assist in an efficient manner due to my race and/or gender.

39) Canter said that he would talk to Wefels.

40) However, hours later on the same day, a Company HR representative Cindy (last name unknown, "Cindy"), along with managing partner Jay Neveloff ("Neveloff") called me and said that I was terminated for not performing a closing.

41) Shocked, as I had no knowledge of any closing that I had not performed, I raised protected concerns that this termination was because of my race and/or gender and/or in retaliation for raising protected concerns.

42) The Company HR representative ignored my protected concerns and re-stated I was terminated.

43) Upon information and belief, I was replaced by a Caucasian male.

44) I believe I was subjected to a hostile work environment, harassed, improperly disciplined, and/or fired in a discriminatory manner because of my gender.

45) I believe I was subjected to a hostile work environment, harassed, improperly disciplined, and/or fired in a discriminatory manner because of my race.

46) I have suffered and continue to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, other monetary harms, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

47) I seek all damages to which I am entitled, including lost compensation and benefits (including back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, lost future earning capacity and emotional distress), punitive damages, attorney's fees, interest and costs.

48) I request that this charge be cross filed with both the New York City Commission for Human Rights and the United States Equal Employment Opportunity Commission.

Respectfully Submitted,

**Yajaira Crespo,** Complainant
**309 Surf Drive**
**Bronx, NY 10473**


By **her** attorney

Date: *10-13-20*

*Trevor Bricelop*

**Trevor Brice**
Law Offices of Wyatt & Associates
17 Elm Street, Suite C211
Keene, NH 03431
P: 603-357-1111
F: 603-685-2868


I swear or affirm that I have read the above charge and that it is true to the best of knowledge, information and belief.

Signature of Complainant.

**Notarized Acknowledgment**

YAJAIRA V. CRESPO_____ (Complainant Name) being duly sworn, on oath, states that he/she is the Complainant herein; that s/he has read the foregoing complaint including the above particulars and knows the content thereof; that the same is true of his/her own knowledge, except as to the matter herein stated on information and belief and that as to these matters she/he believes the same to be true.

Dated in NEW YORK (county), New York (state), on this October 6, 2020 (date).

_____
Complainant's Signature

Subscribed and sworn before me on October 6, 2020 (notary date here).

_____
Notary Signature

(seal/stamp here)                    My Commission Expires: 3/7/2021

SHANA FIGUEROA
Notary Public - State of New York
No. 01FI6123315
Qualified in Bronx County
My Commission Expires 3/7/21

CITY OF NEW YORK
COMMISSION ON HUMAN RIGHTS
-------------------------------------------------------------------X
In the Matter of the Complaint of:

YAJAIRA CRESPO,

Complainant.

-against-

KRAMER LEVIN NAFTALIS & FRANKEL LLP,

Respondent.
-------------------------------------------------------------------X

Respondent Kramer Levin
Naftalis & Frankel LLP's
Verified Answer and Defenses

Charge No: M-E-RS-21-90340-E

Federal Charge No. 16F-2021-
00032C

Respondent Kramer Levin Naftalis & Frankel LLP ("Kramer Levin" or "Respondent"),

as and for its response to Complainant Yajaira Crespo's ("Complainant" or "Crespo")

Complaint, dated October 13, 2020 (the "Complaint"), states as follows:

1.    Denies knowledge or information sufficient to form a belief as to the truth of the

allegations concerning Complainant's race and/or ethnicity.

2.    Denies the allegations in paragraph 2 of the Complaint, except admits that on or

about January 6, 2020 Crespo commenced employment with Kramer Levin as a paralegal.

3.    Denies the allegations in paragraph 3 of the Complaint, except admits that Kramer

Levin has employed 15 or more employees during 20 or more weeks in 2019 and 2020.

4.    Denies the allegations in paragraph 4 of the Complaint.

5.    Denies the allegations in paragraph 5 of the Complaint.

6.    Admits the allegations in paragraph 6 of the Complaint.

7.    Denies the allegations in paragraph 7 of the Complaint, except admits that during

her employment with Kramer Levin Complainant held the title of Paralegal and her duties included

KL3 3317878.7

assisting Kramer Levin attorneys in the Real Estate Department and preparing documentation relating to real estate sales transactions.

8.    Denies the allegations in paragraph 8 of the Complaint.

9.    Denies the allegations in paragraph 9 of the Complaint.

10.    Denies the allegations in paragraph 10 of the Complaint.

11.    Denies the allegations in paragraph 11 of the Complaint, except denies knowledge or information sufficient to form a belief as to Complainant's alleged beliefs.

12.    Denies the allegations in paragraph 12 of the Complaint.

13.    Admits the allegations in paragraph 13 of the Complaint.

14.    Denies the allegations in paragraph 14 of the Complaint.

15.    Denies the allegations in paragraph 15 of the Complaint.

16.    Denies the allegations in paragraph 16 of the Complaint, except admits that Complainant was assigned to create a guidance document describing the procedures relating to certain contemplated closings.

17.    Denies the allegations in paragraph 17 of the Complaint, except admits that the COVID-19 pandemic spread in or about March 2020.

18.    Denies the allegations in paragraph 18 of the Complaint, except admits that due to the COVID-19 pandemic much of Kramer Levin's work force began to work remotely in March 2020.

19.    Denies the allegations in paragraph 19 of the Complaint.

20.    Denies the allegations in paragraph 20 of the Complaint.

21.    Denies the allegations in paragraph 21 of the Complaint.

22.    Denies the allegations in paragraph 22 of the Complaint.

KL3 3317878.7

23.     Admits the allegations in paragraph 23 of the Complaint.

24.     Denies the allegations in paragraph 24 of the Complaint.

25.     Denies the allegations in paragraph 25 of the Complaint.

26.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint, except denies that any wrongful conduct occurred.

27.     Denies the allegations in paragraph 27 of the Complaint.

28.     Denies the allegations in paragraph 28 of the Complaint.

29.     Denies the allegations in paragraph 29 of the Complaint, except admits that Kramer Levin sent an email to all personnel announcing that Kramer Levin would observe June 19, 2020 (Juneteenth) as a firm holiday.

30.     Does not respond to the allegations contained in paragraph 30 of the Complaint on the ground that they do not require a response.

31.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Complaint.

32.     Denies the allegations in paragraph 32 of the Complaint.

33.     Denies the allegations in paragraph 33 of the Complaint.

34.     Denies the allegations in paragraph 34 of the Complaint.

35.     Denies the allegations in paragraph 35 of the Complaint.

36.     Denies the allegations in paragraph 36 of the Complaint.

37.     Denies the allegations in paragraph 37 of the Complaint.

38.     Denies the allegations in paragraph 38 of the Complaint.

39.     Denies the allegations in paragraph 39 of the Complaint.

3

KL3 3317878.7

40.     Denies the allegations in paragraph 40 of the Complaint, except admits that Cindy Arnold, who is the Chief Human Resources Officer of Kramer Levin, and Jay Neveloff, who is the Chair of the Real Estate Department at Kramer Levin, participated in a conference call with Complainant on June 18, 2020 and advised her that her employment with Kramer Levin was terminated.

41.     Denies the allegations in paragraph 41 of the Complaint.

42.     Denies the allegations in paragraph 42 of the Complaint.

43.     Denies the allegations in paragraph 43 of the Complaint.

44.     Denies the allegations in paragraph 44 of the Complaint.

45.     Denies the allegations in paragraph 45 of the Complaint.

46.     Denies the allegations in paragraph 46 of the Complaint.

47.     Denies the allegations in paragraph 47 of the Complaint, except admits that the Complaint purports to seek the damages referenced therein.

48.     Does not respond to the allegations contained in paragraph 48 of the Complaint on the ground that they do not require a response.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a cause of action upon which relief may be granted.

4

## SECOND DEFENSE

Complainant's claims are barred by the doctrines of waiver, estoppel, laches, or other equitable defenses.

## THIRD DEFENSE

Respondent had legitimate, non-discriminatory reasons for each of the actions and employment decisions alleged in the Complaint based on reasonable factors other than Complainant's membership in any protected class or any alleged protected activity.

## FOURTH DEFENSE

Complainant's claims are barred because Respondent exercised reasonable care to prevent and promptly address any perceived discriminatory behavior and Complainant unreasonably failed to take advantage of preventative or corrective opportunities or to avoid harm otherwise.

## FIFTH DEFENSE

The conduct about which Complainant complains consists of nothing more than petty slights or trivial inconveniences.

## SIXTH DEFENSE

Respondent would have taken the same actions regardless of Complainant's alleged protected activity.

## SEVENTH DEFENSE

Complainant cannot recover any punitive or liquidated damages because Respondent made a good faith effort to comply with all applicable anti-discrimination statutes.

## EIGHTH DEFENSE

Complainant is not entitled to punitive damages because Complainant cannot demonstrate malice or reckless indifference.

## NINTH DEFENSE

Respondent cannot be held liable for punitive damages pursuant to § 8-107(13)(d) and (e) of the Administrative Code of the City of New York.

## TENTH DEFENSE

Complainant' s claims for relief are barred, in whole or in part, because Complainant has not alleged facts sufficient to support an award of compensatory damages, liquidated damages, punitive damages, and/or damages for any physical, mental, or emotional injury.

5

KL3 3317878.7

WHEREFORE, Respondent respectfully requests that the City of New York Commission

on Human Rights dismiss the Complaint in its entirety.

Dated: New York, New York
       November 24, 2020

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: _____
       Kevin B. Leblang
       Izabel P. McDonald
       kleblang@kramerlevin.com
       imcdonald@kramerlevin.com

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

*On Behalf of Respondent*


TO:   The New York City Commission on Human Rights
       Law Enforcement Bureau
       22 Reade Street
       New York, New York 10007

6

# WYATT & ASSOCIATES

EMPLOYMENT LAW, HR SOLUTIONS

Katherine Gabriel, Esq
katherine@wyattlegalservices.com
P: 603-357-1111 F: 603-685-2868
Mailing Address: 63 Emerald Street, PMB #603, Keene NH 03431
Physical Address: 17 Elm Street Suite C211 Keene NH 03431
New York Office: 418 Broadway 2nd Floor Albany NY 12207

VIA FIRST CLASS MAIL AND ELECTRONIC MAIL

June 1, 2023

Yajaira Crespo
309 Surf Drive
Bronx, NY 10473
kyla.korner@gmail.com

Dear Yajaira,

As you know, the investigator issued an administrative closure in your case. We discussed this and you authorized us to convey the updated demand of $300,000. At this time, Respondent has declined to respond with a substantive counteroffer to the demand of $300,000. As explained, this does mean that there is nothing further we can do. As such, we are concluding our representation of you in this matter. Our firm is voiding the expenses you owe and, as such, you do not owe us anything and the contingency fee agreement is now null and void (we do not represent you in any capacity going forward). We have previously provided you with copies of your client file, but please let us know if you need a hard copy mailed to you directly.

As discussed previously, if you wish to continue to pursue your case, you would need to file within the applicable statutory deadlines. In order to pursue both your state and federal claims in federal court, you can file in Federal Court within 90 days from when we received the Right to Sue letter from the EEOC (by August 20, 2023). Failure to file by this date may mean that you lose your federal rights. As noted, this administrative closure determination means the statute of limitations to file your case in state court arguably has been "tolled." In practice, this means the timing and to file in state court does not include any time that your case was pending at the Commission. From my calculation, this would give you until November 18, 2025 to file in state court. However, as I have explained previously, we generally recommend filing earlier, if you are looking to pursue your case in court. If you decide to move forward, meeting these deadlines will be your responsibility.

On a personal note, I want to say that it has been a privilege to represent you during this trying stage of your life. I wish we had received a better outcome, but unfortunately that cannot be helped. Thank you again for allowing us to represent you during this time and please do not hesitate to contact us directly if you need our assistance in the future.

Sincerely,

Katherine Gabriel

Cc:  Kramer Levin Naftalis & Frankel LLP
 Attn: Legal Unit
 1177 6th Avenue
 New York NY 10036

 WYATT & ASSOCIATES
 Attn: Trevor Brice - Esq
 17 Elm Street
 Suite C211
 Keene, NH 03431

Please retain this notice for your records.

# WYATT & ASSOCIATES
## EMPLOYMENT LAW, HR SOLUTIONS

Katherine Gabriel, Esq
Katherine@wyattlegalservices.com
P: 603-357-1111 F: 603-685-2868
Main Office: 17 Elm Street Suite C211 Keene NH 03431
New York Office: 418 Broadway 2nd Floor Albany NY 12207

## Confidential Settlement Communications

January 2, 2023

*VIA ELECTRONIC MAIL AND FIRST CLASS MAIL*
Izabel McDonald
Special Counsel
1177 Avenue of the Americas
New York, NY 10036
Imcdonald@kramerlevin.com

Re:     Yajaira Crespo v. Kramer Levin Naftalis, LLP
        Charge No.: M-E-RS-21-90340-E
        EEOC No.: 16F-2021-00032C

Dear Attorney McDonald,

As you know, our law firm represents Yajaira Crespo ("Ms. Crespo") with regard to the charge of discrimination which was filed with applicable government entities, and which you have seen. It does not seem beneficial to recount all the facts relevant to my client's legal claims in this letter. You have seen our Charge of Discrimination and it is likely clear already that we as a Law Firm believe that Ms. Crespo has a number of strong legal claims against your client. We are very confident that any factfinder will find in our favor and will agree that Ms. Crespo was terminated for discriminatory and/or retaliatory reasons.

Obviously, upon a finding of liability, Ms. Crespo would be eligible to receive compensatory damages based on her lost back pay and emotional distress. Importantly, in addition to her lost pay, my client has suffered great emotional pain and harm from her improper termination. Notably, Ms. Crespo experienced symptoms of depression, including, but not limited to, trouble sleeping and appetite changes. Ms. Crespo further felt withdrawn, a lack of motivation, and strained relationships with her family members, primarily with her young daughter. Furthermore, due to her termination, Ms. Crespo also experienced a severe flare up of her anxiety diagnosis, which required her to seek more frequent treatment from a therapist. As such, we believe any jury would find that Ms. Crespo suffered far more than a "garden variety"

Law Offices of Wyatt & Associates P.L.L.C.                    wyattlegalservices.com

# WYATT & ASSOCIATES
## EMPLOYMENT LAW, HR SOLUTIONS

level of emotional distress damages and thus we are confident that the fact finder in this case would place significant value on the emotional pain experienced by my client.

Additionally, a finding would also naturally encompass an award of annual interest, court costs, and attorneys' fees (which can represent a substantial sum for a case taken through trial).

As you know, New York juries have rendered many significant verdicts in similarly situated employment discrimination cases, including:

- Turley v. ISG Lackawanna, Inc., 960 F.Supp.2d 425 (W.D.N.Y. 2013) (race discrimination), awarded $25,320,000 ($24,000,000 punitive damages and $1,320,000 compensatory damages);

- Mayo-Coleman v. Am. Sugar Holdings, Inc., 2018 U.S. Dist. LEXIS 94821 (S.D.N.Y. 2018) (sexual harassment), awarded $11,700,000 punitive damages and $1,700,000 compensatory damages);

- Sanders v. Madison Square Garden, L.P., 525 F.Supp 2d 364 (S.D.N.Y. 2007) (sex discrimination, sexual harassment, and retaliation), awarded $11,600,000 compensatory and punitive damages;

- Bell v. Helmsley, 2003 N.Y. Misc. LEXIS 192 (Sup. Ct. N.Y. Cnty., 2003) (sexual orientation discrimination), awarded $11,170,000 million ($10,000,000 in punitive damages and $1,170,000 compensatory damages);

- Small v. New York State Dep't of Corr. & Cmty. Supervision, et al., No. 12-CV-1236S (W.D.N.Y. 2019) (sex discrimination, sexual harassment, and retaliation), awarded $7,020,000 ($4,800,000 compensatory damages, $740,000 in back pay, $3,600,000 in front pay, and $50,000 in punitive damages);

- Norville v. Staten Island University Hospital, 2003 U.S. Dist. LEXIS 28399 (E.D.N.Y. 2003) (disability discrimination), awarded $6,000,000 ($5,000,000 punitive damages and $1,500,000 compensatory damages);

- Gallegos v. Elite Model Mgmt. Corp., 28 A.D. 3d 50 (Sup. Ct. N.Y. Cnty., 2005) (disability discrimination), awarded $5,273,590 ($2,600,000 punitive damages, $2,000,000 pain and suffering, and $673,590 for lost earnings);

- EEOC v. United Health Programs of America Inc., 213 F.Supp.3d 377 (E.D.N.Y. 2016), (religious discrimination), awarded $5,102,000 (compensatory and punitive damages);

- Serdans v. Presbyterian Hospital, 2011 U.S. Dist. LEXIS 109350 (S.D.N.Y. 2011) (disability discrimination and failure to accommodate), awarded $4,025,000 (compensatory and punitive damages);

# WYATT & ASSOCIATES
## EMPLOYMENT LAW, HR SOLUTIONS

- Lewis v. Am. Sugar Ref., Inc., 325 F.Supp. 3d 321 (S.D.N.Y. 2018) (race discrimination), awarded $2,350,000 ($2,000,000 punitive damages, $250,000 compensatory damages, and $104,000 actual damages);

- Emamian v. Rockefeller University, 07-cv-3919, 2018 WL 2849700 (S.D.N.Y. June 8, 2018) (race discrimination, national origin discrimination), awarded $2,000,000 million in punitive damages;

- Duarte v. St. Barnabas Hospital, 15-CV-6824, 2018 WL 4440501 (S.D.N.Y. Sept. 17, 2018) (disability discrimination), awarded $1,374,000 ($624,000 compensatory damages and $750,000 in punitive damages).

Despite my client's strong legal claims and commitment to pursuing this matter, for a limited period of time, we are willing to engage in discussions to see if an amicable settlement can be reached at this stage in Ms. Crespo's case. My client understands that successful resolution of this matter would require good faith negotiation, and is willing to either (i) participate in a free mediation sponsored by the NYC CHR, or (ii) equally split the cost of engaging in a private mediation, if your client is likewise prepared to participate in good faith.

Please let me know no later than close of business on January 16, 2023, if your client is interested in engaging in settlement negotiations.

Very truly yours,

Katherine A. Gabriel

# WYATT & ASSOCIATES

EMPLOYMENT LAW, HR SOLUTIONS

Katherine Gabriel, Esq
katherine@wyattlegalservices.com
P: 603-357-1111 F: 603-685-2868
Mailing Address: 63 Emerald Street, PMB #603, Keene NH 03431
Physical Address: 17 Elm Street Suite C211 Keene NH 03431
New York Office: 418 Broadway 2ⁿᵈ Floor Albany NY 12207

**Confidential Settlement Communications**

Via Electronic Mail and First Class Mail with Tracking

May 12, 2021

Izabel McDonald
Special Counsel
1177 Avenue of the Americas
New York, NY 10036
Imcdonald@kramerlevin.com

Re:     Yajaira Crespo v. Kramer Levin Naftalis, LLP
        Charge No.: M-E-RS-21-90340-E
        EEOC No.: 16F-2021-00032C

Dear Attorney McDonald,

As you know, our law firm has been retained to represent Yajaira Crespo ("Ms. Crespo") with regard to the charge of discrimination which was filed with applicable government entities, and which you have now received. It does not seem beneficial to recount all the facts relevant to my client's legal claims in this letter. You have seen our Charge of Discrimination and it is likely clear already that we as a Law Firm believe that Ms. Crespo has a number of strong legal claims against your client. We are very confident that any factfinder will find in our favor and will agree that Ms. Crespo was terminated for discriminatory and/or retaliatory reasons.

Obviously, upon a finding of liability, Ms. Crespo would be eligible to receive compensatory damages based on her lost back pay and emotional distress. Importantly, in addition to her lost pay, my client has suffered great emotional pain and harm from her improper termination. Notably, Ms. Crespo experienced symptoms of depression, including, but not limited to, trouble sleeping and appetite changes. Ms. Crespo further felt withdrawn, a lack of motivation, and strained relationships with her family members, primarily with her young daughter. Furthermore, due to her termination, Ms. Crespo also experienced a severe flare up of her anxiety diagnosis, which required her to seek more frequent treatment from a therapist. As such, we believe any jury would find that Ms. Crespo suffered far more than a "garden variety"

# WYATT & ASSOCIATES
## EMPLOYMENT LAW, HR SOLUTIONS

level of emotional distress damages and thus we are confident that the fact finder in this case would place significant value on the emotional pain experienced by my client.

Additionally, a finding would also naturally encompass an award of annual interest, court costs, and attorneys' fees (which can represent a substantial sum for a case taken through trial).

As you know, New York juries have rendered many significant verdicts in similarly situated employment discrimination cases, including:

- Turley v. ISG Lackawanna, Inc., 960 F.Supp.2d 425 (W.D.N.Y. 2013) (race discrimination), awarded $25,320,000 ($24,000,000 punitive damages and $1,320,000 compensatory damages);

- Mayo-Coleman v. Am. Sugar Holdings, Inc., 2018 U.S. Dist. LEXIS 94821 (S.D.N.Y. 2018) (sexual harassment), awarded $11,700,000 punitive damages and $1,700,000 compensatory damages;

- Sanders v. Madison Square Garden, L.P., 525 F.Supp 2d 364 (S.D.N.Y. 2007) (sex discrimination, sexual harassment, and retaliation), awarded $11,600,000 compensatory and punitive damages;

- Bell v. Helmsley, 2003 N.Y. Misc. LEXIS 192 (Sup. Ct. N.Y. Cnty., 2003) (sexual orientation discrimination), awarded $11,170,000 million ($10,000,000 in punitive damages and $1,170,000 compensatory damages);

- Small v. New York State Dep't of Corr. & Cmty. Supervision, et al., No. 12-CV-1236S (W.D.N.Y. 2019) (sex discrimination, sexual harassment, and retaliation), awarded $7,020,000 ($4,800,000 compensatory damages, $740,000 in back pay, $3,600,000 in front pay, and $50,000 in punitive damages);

- Norville v. Staten Island University Hospital, 2003 U.S. Dist. LEXIS 28399 (E.D.N.Y. 2003) (disability discrimination), awarded $6,000,000 ($5,000,000 punitive damages and $1,500,000 compensatory damages);

- Gallegos v. Elite Model Mgmt. Corp., 28 A.D. 3d 50 (Sup. Ct. N.Y. Cnty., 2005) (disability discrimination), awarded $5,273,590 ($2,600,000 punitive damages, $2,000,000 pain and suffering, and $673,590 for lost earnings);

- EEOC v. United Health Programs of America Inc., 213 F.Supp.3d 377 (E.D.N.Y. 2016), (religious discrimination), awarded $5,102,000 (compensatory and punitive damages);

- Serdans v. Presbyterian Hospital, 2011 U.S. Dist. LEXIS 109350 (S.D.N.Y. 2011) (disability discrimination and failure to accommodate), awarded $4,025,000 (compensatory and punitive damages);

# WYATT & ASSOCIATES
### EMPLOYMENT LAW, HR SOLUTIONS

- Lewis v. Am. Sugar Ref., Inc., 325 F.Supp. 3d 321 (S.D.N.Y. 2018) (race discrimination), awarded $2,350,000 ($2,000,000 punitive damages, $250,000 compensatory damages, and $104,000 actual damages);

- Emamian v. Rockefeller University, 07-cv-3919, 2018 WL 2849700 (S.D.N.Y. June 8, 2018) (race discrimination, national origin discrimination), awarded $2,000,000 million in punitive damages;

- Duarte v. St. Barnabas Hospital, 15-CV-6824, 2018 WL 4440501 (S.D.N.Y. Sept. 17, 2018) (disability discrimination), awarded $1,374,000 ($624,000 compensatory damages and $750,000 in punitive damages).

Despite Ms. Crespo's strong legal claims and commitment to pursuing this matter, she has re-authorized me to make a settlement offer of one-hundred seventy-four thousand dollars ($174,000) one final time. However, if there is no reply by May 25, 2021, the offer will be withdrawn at that time.

My client understands that successful resolution of this matter would require good faith negotiation, and is willing to either (i) participate in a free mediation sponsored by the NYC CHR, or (ii) equally split the cost of engaging in a private mediation, if your client is likewise prepared to participate in good faith. Please let me know no later than close of business May 25, 2021, if your client is interested in engaging in settlement negotiations.

Very truly yours,

Katherine A. Gabriel

# WYATT & ASSOCIATES
## EMPLOYMENT LAW, HR SOLUTIONS

Katherine Gabriel, Esq
katherine@wyattlegalservices.com
P: 603-357-1111 F: 603-685-2868
Mailing Address: 63 Emerald Street, PMB #603, Keene NH 03431
Physical Address: 17 Elm Street Suite C211 Keene NH 03431
New York Office: 418 Broadway 2nd Floor Albany NY 12207

Via First Class Mail with Tracking

November 25, 2020

Kramer Levin Naftalis & Frankel LLP
Attention: Chief Operating Officer
1177 Avenue of the Americas
New York, NY 10036

Re:  Yajaira Crespo v. Kramer Levin Naftalis & Frankel LLP
     Charge No.: M-E-RS-21-90340-E
     EEOC No.: 16F-2021-00032C

Dear Mr. Rosswood,

My law firm has been retained to represent Yajaira Crespo ("Ms. Crespo") with regard to the charge of discrimination which was recently filed with applicable government entities, and which you have likely received. If you are represented by an attorney in this matter, please let me know and I will direct all further correspondence to that individual. The primary purpose of this letter is to ensure that your organization knows that, as a party to litigation, you have a duty to preserve all documents, including emails and other electronically stored information, that are potentially relevant to the litigation. Additional information about this legal obligation to preserve evidence is contained in Addendum A at the end of this letter.

Additionally, my client is formally requesting a copy of the personnel file related to my client's employment. Additional information concerning this issue, including my client's formal request for a copy of the applicable personnel file, is contained in Addendum B at the end of this letter.

It does not seem beneficial to recount all the facts relevant to my client's legal claims in this letter. You have seen our Charge of Discrimination and it is likely clear already that we as a Law Firm believe that Ms. Crespo has a number of strong legal claims against your organization.

---

Law Offices of Wyatt & Associates P.L.L.C.                    wyattlegalservices.com

# WYATT & ASSOCIATES
### EMPLOYMENT LAW, HR SOLUTIONS

Katherine Gabriel, Esq
katherine@wyattlegalservices.com
P: 603-357-1111 F: 603-685-2868
Mailing Address: 63 Emerald Street, PMB #603, Keene NH 03431
Physical Address: 17 Elm Street Suite C211 Keene NH 03431
New York Office: 418 Broadway 2nd Floor Albany NY 12207

We are very confident that any factfinder will find in our favor and will agree that Ms. Crespo was terminated for discriminatory and/or retaliatory reasons.

Obviously, upon a finding of liability, Ms. Crespo would be eligible to receive compensatory damages based on her lost back pay and emotional distress. Importantly, in addition to her lost pay, my client has suffered great emotional pain and harm from her improper termination. Notably, Ms. Crespo experienced symptoms of depression, including, but not limited to, trouble sleeping, crying, and appetite changes. Ms. Crespo further felt withdrawn, a lack of motivation, and strained relationships with her family members, primarily with her young daughter. Furthermore, due to her termination, Ms. Crespo also experienced a severe flare up of her anxiety diagnosis, which required her to seek more frequent treatment from a therapist. As such, we believe any jury would find that Ms. Crespo suffered far more than a "garden variety" level of emotional distress damages and thus we are confident that the fact finder in this case would place significant value on the emotional pain experienced by my client.

Additionally, a finding would also naturally encompass an award of annual interest, court costs, and attorneys' fees (which can represent a substantial sum for a case taken through trial).

As you know, New York juries have rendered many significant verdicts in similarly situated employment discrimination cases, including:

- Turley v. ISG Lackawanna, Inc., 960 F.Supp.2d 425 (W.D.N.Y. 2013) (race discrimination), awarded $25,320,000 ($24,000,000 punitive damages and $1,320,000 compensatory damages);
- Mayo-Coleman v. Am. Sugar Holdings, Inc., 2018 U.S. Dist. LEXIS 94821 (S.D.N.Y. 2018) (sexual harassment), awarded $11,700,000 punitive damages and $1,700,000 compensatory damages);
- Sanders v. Madison Square Garden, L.P., 525 F.Supp 2d 364 (S.D.N.Y. 2007) (sex discrimination, sexual harassment, and retaliation), awarded $11,600,000 compensatory and punitive damages;

# WYATT & ASSOCIATES
## EMPLOYMENT LAW, HR SOLUTIONS

Katherine Gabriel, Esq
katherine@wyattlegalservices.com
P: 603-357-1111 F: 603-685-2868
Mailing Address: 63 Emerald Street, PMB #603, Keene NH 03431
Physical Address: 17 Elm Street Suite C211 Keene NH 03431
New York Office: 418 Broadway 2nd Floor Albany NY 12207

- Bell v. Helmsley, 2003 N.Y. Misc. LEXIS 192 (Sup. Ct. N.Y. Cnty., 2003) (sexual orientation discrimination), awarded $11,170,000 million ($10,000,000 in punitive damages and $1,170,000 compensatory damages);

- Small v. New York State Dep't of Corr. & Cmty. Supervision, et al., No. 12-CV-1236S (W.D.N.Y. 2019) (sex discrimination, sexual harassment, and retaliation), awarded $7,020,000 ($4,800,000 compensatory damages, $740,000 in back pay, $3,600,000 in front pay, and $50,000 in punitive damages);

- Norville v. Staten Island University Hospital, 2003 U.S. Dist. LEXIS 28399 (E.D.N.Y. 2003) (disability discrimination), awarded $6,000,000 ($5,000,000 punitive damages and $1,500,000 compensatory damages);

- Gallegos v. Elite Model Mgmt. Corp., 28 A.D. 3d 50 (Sup. Ct. N.Y. Cnty., 2005) (disability discrimination), awarded $5,273,590 ($2,600,000 punitive damages, $2,000,000 pain and suffering, and $673,590 for lost earnings);

- EEOC v. United Health Programs of America Inc., 213 F.Supp.3d 377 (E.D.N.Y. 2016), (religious discrimination), awarded $5,102,000 (compensatory and punitive damages);

- Serdans v. Presbyterian Hospital, 2011 U.S. Dist. LEXIS 109350 (S.D.N.Y. 2011) (disability discrimination and failure to accommodate), awarded $4,025,000 (compensatory and punitive damages);

- Lewis v. Am. Sugar Ref., Inc., 325 F.Supp. 3d 321 (S.D.N.Y. 2018) (race discrimination), awarded $2,350,000 ($2,000,000 punitive damages, $250,000 compensatory damages, and $104,000 actual damages);

- Emamian v. Rockefeller University, 07-cv-3919, 2018 WL 2849700 (S.D.N.Y. June 8, 2018) (race discrimination, national origin discrimination), awarded $2,000,000 million in punitive damages;

- Duarte v. St. Barnabas Hospital, 15-CV-6824, 2018 WL 4440501 (S.D.N.Y. Sept. 17, 2018) (disability discrimination), awarded $1,374,000 ($624,000 compensatory damages and $750,000 in punitive damages).

Despite Ms. Crespo's strong legal claims and commitment to pursuing this matter, she has authorized me to make a settlement offer of one hundred and seventy-four thousand dollars ($174,000). My client understands that successful resolution of this matter would require good faith negotiation and is willing to participate in a free mediation sponsored by the NYCCHR, if your client is likewise prepared to participate in good faith. Please let me know no

**WYATT & ASSOCIATES**
EMPLOYMENT LAW, HR SOLUTIONS

Katherine Gabriel, Esq
katherine@wyattlegalservices.com
P: 603-357-1111 F: 603-685-2868
Mailing Address: 63 Emerald Street, PMB #603, Keene NH 03431
Physical Address: 17 Elm Street Suite C211 Keene NH 03431
New York Office: 418 Broadway 2nd Floor Albany NY 12207

later than close of business December 9, 2020 if your client is interested in engaging in settlement negotiations.

Very truly yours,

Katherine A. Gabriel

# WYATT & ASSOCIATES
## EMPLOYMENT LAW, HR SOLUTIONS

Katherine Gabriel, Esq
katherine@wyattlegalservices.com
P: 603-357-1111 F: 603-685-2868
Mailing Address: 63 Emerald Street, PMB #603, Keene NH 03431
Physical Address: 17 Elm Street Suite C211 Keene NH 03431
New York Office: 418 Broadway 2nd Floor Albany NY 12207

## ADDENDUM A

### *Your Preservation Obligations Related to Documents, Emails, and Data*

As a party to litigation, you have a duty to preserve all documents, including electronically stored information ("ESI"), potentially relevant to the litigation. *See* Fed. R. Civ. P. 37(e) and equivalent state rules. We thus want to emphasize that it is important that you take immediate action to comply with applicable legal rules related to your organization's obligation to preserve all potential sources of evidence that could be relevant to this case. Such records may include, but are not be limited to, all communications and other evidence related to my client's performance, conduct, concerns and termination, including any emails and other communications involving or referencing my client or any of the allegations contained in the charge. Your preservation obligations encompass ESI (electronically stored information), such as emails, texts, cell phones, computers and computer files, databases, payroll data, and other electronic data. Typically, employers take measures to preserve full email accounts, relevant device hardware, and any other sources of potentially relevant ESI or physical documents. Notably, your preservation obligations extend to all ESI and documents within your possession, custody, or control, including any information in the custody of your employees or which is stored or archived on your behalf by any third parties.

You must act immediately to preserve all ESI and physical documents that could contain potentially relevant information. Adequate preservation of ESI and physical documents requires more than simply refraining from efforts to intentionally destroy or dispose of it. Whether intentionally or not, employees can improperly delete emails or other ESI if adequate measures are not taken to preserve all ESI that currently exists. Likewise, if retention protocols are not proactively modified, emails or entire email accounts of current or former employees may be improperly deleted or otherwise lost. Similarly, devices can be lost or accidentally damaged, and sources of ESI can be altered and erased by continued use. Continued use of databases (without taking measures to preserve relevant data in its original form) may irretrievably alter or destroy relevant evidence. You must take measures to prevent the loss of ESI and physical records and to

# WYATT & ASSOCIATES
EMPLOYMENT LAW, HR SOLUTIONS

Katherine Gabriel, Esq
katherine@wyattlegalservices.com
P: 603-357-1111 F: 603-685-2868
Mailing Address: 63 Emerald Street, PMB #603, Keene NH 03431
Physical Address: 17 Elm Street Suite C211 Keene NH 03431
New York Office: 418 Broadway 2nd Floor Albany NY 12207

employ proper protocols to protect relevant records until final resolution of this legal matter, including suspending standard document destruction/disposal procedures and ensuring that employees do not, or cannot, delete any potentially relevant emails, whether intentionally or unintentionally. Any failure to preserve relevant records could result in a court ordering a negative inference against you in upcoming litigation and/or imposing fines or other penalties.

We further request that you preserve ESI in its native form in a manner that does not remove or degrade metadata, searchability, redlines, underlining formulas, or that would otherwise make it difficult to access or use efficiently in litigation. With respect to the servers used to manage and store email, the complete contents of each potentially relevant user's email account should be preserved, including the complete email accounts of our client, all higher level individuals in the chain of command above our client, all individuals involved in the decision to take each and every adverse action against our client (including any termination decision), and all individuals who had any involvement related to any of the matters referenced in the Charge. There are several ways to preserve the content of servers and web-based email accounts. If you are questioning whether the preservation methods you are pursuing would be acceptable to us, please contact us to discuss. You should likewise not take any actions that shift ESI from more easily accessible storage formats or locations to less accessible ones.

# WYATT & ASSOCIATES
### EMPLOYMENT LAW, HR SOLUTIONS

Katherine Gabriel, Esq
katherine@wyattlegalservices.com
P: 603-357-1111 F: 603-685-2868
Mailing Address: 63 Emerald Street, PMB #603, Keene NH 03431
Physical Address: 17 Elm Street Suite C211 Keene NH 03431
New York Office: 418 Broadway 2nd Floor Albany NY 12207

## ADDENDUM B

### *Formal Personnel File Request*

As noted in the attached authorization, my client hereby formally requests that you provide a copy of my client's complete personnel file, in keeping with applicable law. These records should be promptly transmitted to my client through the care of my law office, in keeping with the instructions in the attached authorization. When providing these records, it is important to keep in mind that under applicable law, you may be obligated to produce personnel records even if they are not stored in what you consider to be your formal personnel file. In other words, the definition of a personnel file under applicable law is not limited to the contents of whatever physical file an employer may happen to maintain, and thus documents may need to be collected from multiple sources or locations. My client trusts and expects that you will immediately comply with this formal request to promptly provide a copy of the complete personnel records.

# WYATT & ASSOCIATES
## EMPLOYMENT LAW, HR SOLUTIONS

P: 603-357-1111 F: 603-685-2868
Mailing Address: 63 Emerald Street, PMB #603, Keene NH 03431
Physical Address: 17 Elm Street Suite C211 Keene NH 03431

## Request for Release of Personnel File

I hereby request that Kramer Levin Naftalis & Frankel LLP, and all affiliated entities (collectively, "EMPLOYER") provide me with a copy of my complete personnel file, which should be transmitted to me, care of my attorney, at the following address:

Trevor Brice, Esq.

The Law Offices of Wyatt & Associates, PLLC

17 Elm Street, Suite C211

Keene, NH 03431

Sincerely,

Yajaira Crespo

---

Law Offices of Wyatt & Associates P.L.L.C.                    wyattlegalservices.com

**Yajaira Crespo**

| | |
|---|---|
| **From:** | Yajaira Crespo <kyla.korner@gmail.com> |
| **Sent:** | Monday, August 7, 2023 11:02 PM |
| **To:** | Yajaira Crespo |
| **Subject:** | Fwd: FW: Emailing: Crespo.pdf |

External Message - Please be cautious when opening links or attachments in email.

---------- Forwarded message ---------
From: **Yajaira Crespo** <kyla.korner@gmail.com>
Date: Thu, Jun 18, 2020 at 3:29 PM
Subject: Re: FW: Emailing: Crespo.pdf
To: Arnold, Cindy B. <carnold@kramerlevin.com>
CC: Arnold, Cindy B. <carnold@kramerlevin.com>, Macchi, Samantha <SMacchi@kramerlevin.com>

Cindy,

I was taken by surprise as I mentioned during the call.  Being told that I am not performing up to par is an unfair and incorrect assessment especially when I covered many closings while in the office and during Covid with no or very little assistance.  I didn't have adequate training at Kramer to learn your ways but I have closed hundreds of deals over the years.  I have several emails since my January 6, 2020 start date asking Michael for time to train as per Jonathan's repeated requests.  I have spoken with Jonathan and Josh (Partners) to express my concerns because Michael was too occupied with his work and never able to make time for my training.  I often stated my concerns to my supervisors.

I closed many deals without a hitch during our time in the office for Michael, Meryl and Dana.  When Michael went out on medical leave unexpectedly for over a month, I jumped in and handled his buildings and closings without any issues during his absence.  No one was able to really guide me because they were not familiar with his project or where to find the information for his projects.  I replied to all emails and covered him without any issues.

I was assured by Josh and Jonathan that the limited tasks assigned to me was protocol because I just began employment. To be exact, Jonathan said that I would be utilizing 20% effort while training and he told me not to worry. This was said to me before Covid.  After Covid during a chat with Josh, he explained that due to our current situation, the work would be limited but he said that he is confident that once we returned to the office, that everything will begin running smoothly again and that there would be plenty of work available.

Covid hit and now we were working from home and I sent numerous emails asking if anyone needed assistance.  When Michael went back out unexpectedly again, I successfully covered all of his closings and communicated with all parties including our client.  In addition I worked on new closing files to prepare the files for closing so that when he returned there would be no backed up work for him.  Nothing fell through the cracks while I managed his projects.  I conducted those closings and followed up with the client for Waterline whom I built a good relationship with.

Just this morning, as usual, I had to give John's (Waterline) Executive Assistant, Emily, a full breakdown of adjournments because she didn't have the updates required in time for her meeting.  I often communicate with Emily to provide updates so that she is prepared for her meetings with our client, her boss, John.  She texts, calls and emails me often for updates.

1

This is really unfair to me. It's absolutely an unfortunate surprise and I am not in agreement with the termination on the basis you provided.

I would like to know the process for filing a grievance or having this decision re-evaluated because I did perform my duties as assigned. There is nothing that I have outstanding because I completed all tasks assigned to me.

I was in the office as a new employee for just 90 days before Covid struck. You said during our phone conversation with Jay that the firm made a business decision based on my work performance and that you were paying severance until July 17 and that I can get a reference letter and collect unemployment. This is all just shocking. I've had a 25 year long fruitful career in Real Estate. I have never been terminated from any job and I have performed all of my duties.

If my performance was poor then why hasn't anyone said that there was a concern? Why didn't someone notify me sooner especially when I was the one raising concerns about the limited amount of work I was being assigned? I was told all along that I was doing a great job and that I didn't have anything to worry about. Why wasn't I put on a performance plan? I received no notice about concerns about my work performance. On the contrary, my co-workers, colleagues and supervisors all said that I was doing great.

I hope you didn't misunderstand what I stated on the phone about Michael. I am not putting blame on him, I was merely pointing out that I did everything that my supervisors asked me to do and I shadowed him as best I could given the extenuating circumstances of his medical condition which triggered a leave of absence, and then Covid struck, followed by another medical leave.

What is the KL protocol for employee performance and why is today's termination phone call the first time that I am being advised that my performance is not up to par? Please explain KL's performance management guideline that would of assessed my performance and behavior to give me proper coaching support to help me perform my job responsibilities if in fact there was improvement needed. I need to understand why today was the first time that I was told that I was not performing up to par especially when I completed all assignments in a timely manner and was given positive feedback from the partners, colleagues, and the clients?

I would like a written response.

Thanks

On Thu, Jun 18, 2020 at 1:53 PM Arnold, Cindy B. <carnold@kramerlevin.com> wrote:
Yajaira

Attached please find the agreement we discussed on the phone. I am available to set up a call with you, if you want to discuss further. It appeared you weren't done speaking when you wanted to hang up. Let me know. You will need to sign the letter in order for the severance to be paid. Samantha will send you a separate COBRA letter.

Cindy

>

Cindy B. Arnold
Managing Director, Chief Human Resources Officer
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas New York, New York 10036
T 212.715.9371   F 212.715.8371

2

# Kramer Levin



**Cindy B. Arnold**
Managing Director, Chief Human Resources Officer
T 212.715.9371
F 212.715.8371
carnold@kramerlevin.com

1177 Avenue of the Americas
New York, NY 10036
T 212.715.9100
F 212.715.8000

June 18, 2020

Yajaira V. Crespo
309 Surf Drive
Bronx, NY 10473

Dear Yajaira,

   This letter agreement confirms the terms of the termination of your employment with Kramer Levin Naftalis & Frankel LLP (the "Firm").

   1. Your employment with the Firm is terminated effective June 18, 2020 (the "Termination Date"). Except as specifically provided in this letter agreement, all existing employment agreements between you and the Firm, whether oral or written, are hereby terminated. You agree that this letter agreement supersedes any such agreements between you and the Firm.

   2. In full consideration for your promises, covenants and agreements set forth herein, provided that you (i) timely execute this agreement in the space provided below and deliver it to the Firm, (ii) do not revoke your executed letter agreement within the revocation period described below (iii) make yourself reasonably available by telephone and email during the Severance Period, as defined below, to answer questions regarding matters on which you worked while at the Firm, and (iv) have complied with your obligations under this agreement:

   (a) The Firm agrees to continue to pay your base salary through July 17, 2020 (the "Severance Period"), less all applicable withholdings for federal, state and local income taxes, Social Security, and all other customary withholdings. Such payments shall be made in accordance with the Firm's regular payroll practices following the later of the Termination Date and the tenth day after the receipt by the Firm of an executed original of this letter agreement.

   (b) If you timely elect COBRA continuation coverage for medical and dental benefits, the Firm will continue to subsidize such coverage, on the same terms and conditions applicable to you and for the level of coverage you maintained on the Termination Date, through the COBRA Payment End Date (as defined below), and your portion of the premiums will be deducted from the amounts payable to you pursuant to paragraph 2(a) above. The "COBRA Payment End Date" shall be the earlier of (i) July 31, 2020 and (ii) the date you become employed by a third party and are eligible for



coverage under the group benefits plan of the new employer. If during the period you are receiving this benefit, you become employed by a third party and are eligible for coverage under the group benefits plan of the new employer, you must notify the Firm **in writing** of such new employment so that the Firm receives such notification prior to the commencement of this employment. Such notice shall be delivered to Cindy Arnold, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 or CArnold@kramerlevin.com. In the event you do not timely elect COBRA continuation coverage for medical and dental benefits, your medical and dental benefits will terminate effective on June 30, 2020.

3.    Regardless of whether you execute this letter agreement, the Firm shall pay you (a) any accrued, but unpaid, base salary for services rendered through the Termination Date and (b) a lump sum payment for any accrued, but unused, vacation days as of the Termination Date. These payments shall be subject to all applicable withholdings for federal, state and local income taxes, Social Security, and all other customary withholdings and shall be paid in accordance with the Firm's standard payroll practices.

4.    Except as provided in paragraphs 2 and 3 of this letter agreement, you shall not be entitled to any sum of money or benefits from the Firm. You understand that the sum of money and benefits specified in paragraph 2 are being offered to you in exchange for your waiver of rights and claims specified in paragraph 6 below and that you would not otherwise be entitled to these payments or benefits.

5.    You represent that you do not have any claim, action, or proceeding pending against the Firm.

6.    Except as necessary to enforce the terms of this letter agreement, and in exchange for and in consideration of the promises, covenants and agreements set forth herein, you hereby release the Firm, together with its past and present partners, employees, members, managers, agents, predecessors, and assigns, to the maximum extent permitted by law from any and all manner of claims, demands, causes of action, obligations, damages, or liabilities whatsoever of every kind and nature, at law or in equity, known or unknown, and whether or not discoverable, which you have or may have for any period prior to your execution of this letter agreement, including, but not limited to, claims for breach of contract or wrongful discharge, claims for additional compensation, claims for severance pay, claims of defamation or any other tort, claims for unpaid wages or commissions or bonuses or vacation days, claims arising under any federal, state or local labor laws (including, without limitation, the New York Labor Law), claims of discrimination under the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the New York State Human Rights Law, the New York City Human Rights Law, each as amended, or any other federal, state or local laws, claims arising under the Employee Retirement Income Security Act of 1974, and any claim for attorneys' fees or costs.



Notwithstanding the foregoing, the provisions of this paragraph are subject to the provisions of paragraph 13 below, and nothing in this letter agreement shall be a waiver of (a) any vested rights you may have under the Firm's pension plan; (b) any claim by you to enforce the provisions of this letter agreement; or (c) any claims that cannot be waived by law.

7.    You acknowledge that, upon receipt of the amounts referenced in paragraph 3 above, you will have received all compensation due to you for work performed for the Firm. You further represent that you have not at any time made any claim of discrimination or harassment in connection with your employment by the Firm.

8.    You should refer all reference requests from prospective employers to the Firm's Human Resources Department. In response, the Firm's Human Resources Department will provide your dates of employment and job title. The Human Resources department will respond to any other requests for information by stating that it is the policy of the Firm to give out only dates of employment and job title.

9.    You acknowledge that as a result of and in connection with your employment with the Firm, you have come into possession of proprietary and confidential information relating to the business practices, clients, personnel, and financial information of the Firm ("Confidential Information") as well as information related to the representation of clients of the Firm or obtained in connection with the potential representation of a client or prospective client that (a) is protected by the attorney-client privilege or the work product doctrine, (b) could be embarrassing or detrimental to such client or potential client if disclosed, or (c) the client or potential client has requested be kept confidential ("Client Confidential Information"); *provided* that Confidential Information (but not Client Confidential Information) does not include any information that is available to the general public or is generally known in the Firm's industry other than as a result of a disclosure in violation of this agreement. Confidential Information and Client Confidential Information may be in any medium or form, including, without limitation, physical documents, computer files or disks, video and audio recordings, and oral communications. Except as provided in paragraph 13 below, or as required by court order or subpoena, you agree that you will not directly or indirectly use or disclose to any person, Firm or entity such Confidential Information or Client Confidential Information.

10.    It is a material condition of this letter agreement that you maintain strictly confidential, and shall take all reasonable steps to prevent the disclosure to any person or entity, the terms of this letter agreement, provided that this provision does not prohibit you from disclosing such information (a) as provided in paragraph 13 below; (b) when required by law, subpoena or court order; or (c) to your spouse or to your attorneys or accountants for purposes of obtaining legal or tax advice, provided that your spouse, attorneys, and accountants, as applicable, each agrees to be bound by the provisions of this paragraph 10.



11.    You agree to deliver to the Firm all equipment, documents, and other materials (whether or not such equipment, documents, and other materials constitute or contain confidential information) obtained in the course of your employment (including all copies of such documents and other materials), and further agree not to retain any copies of any such equipment, documents, and materials. For purposes hereof, "documents and other materials" means all correspondence, memoranda, files, manuals, books, lists, financial, operating or marketing records, magnetic, optical, or electronic or other media or equipment of any kind which may be in your possession, under your control or accessible to you.

12.    It is a material condition of this letter agreement that, except as permitted pursuant to paragraph 13 below, you agree that you will not make or publish any statement (orally, electronically, or in writing), or instigate, assist or participate in the making or publication of any statement, which would or could libel, slander or disparage (whether or not such disparagement legally constitutes libel or slander) or expose to hatred, contempt or ridicule (a) the Firm; (b) any of its services, affairs or operations; or (c) any of its past or present partners, officers, employees, members, managers, or agents. Nothing herein shall prevent you from making or publishing any truthful statement (i) in accordance with paragraph 13 below; (ii) when required by law, subpoena or court order; (iii) in the course of any legal, arbitral or regulatory proceeding between you and the Firm; (iv) to any governmental authority, regulatory agency or self-regulatory organization; or (v) in connection with any investigation by the Firm.

13.    Nothing in this letter agreement is intended to limit in any way your right or ability to file a charge or claim of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC"), the National Labor Relations Board, the New York State Division of Human Rights (the "Division"), the New York City Commission on Human Rights (the "Commission"), or comparable state or local agencies. These agencies have the authority to carry out their statutory duties by investigating the charge, issuing a determination, or taking any other action authorized under the statutes such agencies enforce. You retain the right to participate in any such action, provided that you hereby waive any right you otherwise would have to recover monetary damages in connection with any charge, complaint, or lawsuit filed by you or by anyone else on your behalf. You retain the right to communicate with the EEOC, the Division, the Commission, and other comparable state or local agencies, and such communication can be initiated by you or in response to a communication from any such agency, and is not limited by any obligation contained in this letter agreement. You also may make confidential disclosures to local law enforcement or an attorney retained by you.

Further, nothing herein or in any Firm policy prohibits or restricts you from reporting possible violations of federal, state, or local law or regulation to, or discussing any such possible violations with, any governmental agency or entity or self-regulatory organization, including by initiating communications directly with, responding



to any inquiry from, or providing testimony before any federal, state, or local regulatory authority or agency or self-regulatory organization, including without limitation the Securities and Exchange Commission and the Occupational Safety and Health Administration, or making any other disclosures that are protected by the whistleblower provisions of any federal, state, or local law or regulation.

14.     You agree to make yourself available to and cooperate with the Firm in any administrative, regulatory, or judicial proceeding or internal investigation. You understand and agree that your cooperation would include, but not be limited to, making yourself available to the Firm upon reasonable notice for interviews and factual investigations; appearing at the Firm's request to give testimony without requiring service of a subpoena or other legal process; volunteering to the Firm pertinent information; and turning over all relevant documents which are or may come into your possession. You understand that in the event the Firm asks for your cooperation in accordance with this provision, the Firm will reimburse you solely for reasonable out-of-pocket expenses incurred by you in connection with such cooperation upon your timely submission of appropriate documentation.

15.     You acknowledge that the Firm does not have any duty to consider you, accept services from or hire you for any future employment and that you will not apply for or otherwise seek employment with the Firm at any time. If you do so apply in the future, the consideration in this letter agreement will be considered a sufficient basis to deny you employment. Notwithstanding the foregoing, you and the Firm agree that if the Firm acquires an entity which employs you then nothing herein obligates you to resign such employment.

16.     If you breach any provision of this letter agreement, in addition to any other remedies the Firm may have at law or in equity, the Firm's obligations under paragraph 2 above shall cease immediately.

17.     Simultaneously with being given a copy of this letter agreement, you have also been given an appendix, labeled "Appendix A." Appendix A contains a list of the class, unit or group of employees covered by the employment separation program (the "Program"), the eligibility factors for the Program, any time limits applicable to the Program, and a listing of the job titles and ages of all employees who were and were not selected for the Program.

18.     In executing this letter agreement, neither you nor the Firm admits any liability or wrongdoing, and the considerations exchanged herein do not constitute an admission of any liability, error, contract violation, or violation of any federal, state, or local law, or regulation.

19.     This letter agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.



20.     The unenforceability or invalidity of any provision or provisions of this letter agreement shall not render any other provision or provisions hereof unenforceable or invalid.

21.     This letter agreement, together with Appendix A, constitutes the entire agreement between you and the Firm and cannot be altered except in a writing signed by both you and the Firm. You acknowledge that you entered into this letter agreement voluntarily, that you fully understand all of its provisions, and that no representations were made to induce execution of this letter agreement that are not expressly contained herein.

22.     This letter agreement shall be governed by and construed (both as to validity and performance) and enforced in accordance with the laws of the State of New York applicable to agreements made and to be performed wholly within such jurisdiction, without regard to the principles of conflicts of law or where the parties are located at the time a dispute arises. Any action concerning any dispute arising out of or relating to this agreement or your employment by the Firm must be brought in a court situated in the City, County and State of New York, and you and the Firm each consents and submits to the jurisdiction such courts for any such action.

23.     This letter agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Facsimile or electronically transmitted signatures shall be treated as original signatures for all purposes.

24.     You are hereby advised to consult with an attorney prior to executing this letter agreement. You acknowledge that you have been afforded an opportunity to consult with the attorneys of your choice prior to executing this letter agreement.

25.     You are hereby notified that you have forty-five (45) days from your receipt of this letter agreement to consider this letter agreement. You are further notified that the countersigned copy of this letter agreement shall be returned to Cindy Arnold, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, CArnold@kramerlevin.com so that it is received on or before the end of this 45-day period. You must countersign and return this letter agreement no later than the end of this 45-day period or the offer embodied in this letter agreement shall be deemed withdrawn.



26.      It is agreed and understood that you will have a period of seven (7) days following your execution of this letter agreement in which to revoke your consent, and that such revocation will be effective only if received in writing by Cindy Arnold, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, CArnold@kramerlevin.com, on or before the expiration of this seven (7) day period.  This letter agreement will not become effective or enforceable until the revocation period has expired.

Please indicate your acceptance of the terms of this letter agreement by countersigning below and returning this letter agreement to me.

Very truly yours,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: _____
Cindy Arnold
Chief Human Resources Officer

Agreed and Accepted:

_____        _____
Yajaira V. Crespo                              Date

## APPENDIX A

Kramer Levin Naftalis & Frankel LLP (the "Firm") informs you that the separation payments and other consideration recited in the letter agreement, to which this Appendix is attached, are being offered to you as part of a separation program (the "Program") offered to certain employees whose employment is being terminated on or about June 18, 2020 (the "Termination Date"),

The Firm further informs you of the following:

1.   The class, unit or group of individuals covered by the Program are: all non-attorney staff who record and bill time to clients in the Firm's New York office.

2.   The eligibility factors for the Program are as follows: Those employees identified in No. 1 above who (i) are being terminated by the Firm on the Termination Date; (ii) are being offered consideration for signing a letter agreement releasing claims against the Firm and other entities and individuals; and (iii) execute a valid binding letter agreement releasing their claims against the Firm and other entities and individuals.

3.   The time limits applicable to the Program are:

After receiving the letter agreement, each employee will have forty-five (45) days to determine whether to participate in the Program and execute the letter agreement; following execution of the letter agreement, the employee will have seven (7) days to revoke the letter agreement.

4.   The following is a listing of the ages and job titles, as of June 18, 2020 of all non-attorney staff who record and bill time to clients in the Firm's New York office who were and were not selected for the Program:



| Title | Age | Selected | Not Selected |
|---|---|---|---|
| Assistant Managing Attorney | 42 | | X |
| Closing Coordinator | 39 | | X |
| Docket Specialist | 39 | | X |
| Immigration Coordinator | 36 | | X |
| IP Docket Clerk | 52 | | X |
| IP Docket Coordinator | 49 | | X |
| Land Use Planner | 40 | | X |
| Law Clerk | 25 | | X |
| Managing Attorney | 40 | | X |
| Managing Attorney Law Clerk | 23 | | X |
| Managing Clerk | 47 | | X |
| Paralegal | 22 | | X |
| Paralegal | 23 | | X |
| Paralegal | 23 | | X |
| Paralegal | 24 | | X |
| Paralegal | 25 | | X |
| Paralegal | 27 | | X |
| Paralegal | 28 | | X |
| Paralegal | 28 | | X |
| Paralegal | 28 | | X |
| Paralegal | 30 | | X |
| Paralegal | 30 | | X |
| Paralegal | 31 | | X |
| Paralegal | 32 | | X |
| Paralegal | 36 | | X |
| Paralegal | 40 | | X |
| Paralegal | 41 | | X |
| Paralegal | 43 | | X |
| Paralegal | 45 | X | |
| Paralegal | 46 | | X |
| Paralegal | 46 | | X |
| Paralegal | 47 | | X |
| Paralegal | 48 | | X |
| Paralegal | 48 | | X |
| Paralegal | 48 | | X |
| Paralegal | 49 | | X |
| Paralegal | 51 | | X |
| Paralegal | 51 | | X |
| Paralegal | 56 | | X |
| Paralegal | 57 | X | |
| Paralegal | 57 | X | |
| Paralegal | 58 | | X |
| Paralegal | 62 | | X |
| Paralegal | 54 | | X |
| Paralegal Coordinator | 54 | | X |



| Title | Age | Selected | Not Selected |
|-------|-----|----------|--------------|
| PT Immigration Writer | 29 | | X |
| PT Writer | 21 | | X |
| Scientific Advisor | 30 | | X |
| Scientific Advisor | 31 | | X |
| Scientific Advisor | 54 | X | |
| Senior Court Specialist | 51 | | X |

12/22/2020                          Gmail - FW: [EXTERNAL] Your next Starbucks visit is on Jason Moff

 Gmail                                        **Yajaira Crespo <kyla.korner@gmail.com>**

---

## FW: [EXTERNAL] Your next Starbucks visit is on Jason Moff
1 message

---

**Crespo, Yajaira V.** <YCrespo@kramerlevin.com>                    Tue, Feb 25, 2020 at 9:16 AM
To: "kyla.korner@gmail.com" <kyla.korner@gmail.com>

---

Yajaira V. Crespo
Paralegal

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T** 212.715.7623  **F** 212.715.8000
ycrespo@kramerlevin.com

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

**From:** Starbucks.com <starbucks@giftcards.starbucks.com>
**Sent:** Monday, February 24, 2020 6:34 PM
**To:** Crespo, Yajaira V. <YCrespo@KRAMERLEVIN.com>
**Subject:** [EXTERNAL] Your next Starbucks visit is on Jason Moff

With this Starbucks eGift Card  |  View Online | Starbucks Coffee Company



12/22/2020                              Gmail - FW: [EXTERNAL] Your next Starbucks visit is on Jason Moff

*Hi Yajaira,*

*"Thank you so much for all your help with our closing! -*
*Jason, Clint & Family"*

*From: Jason Moff*

# $50.00 USD



Pay for your coffee, send a Starbucks eGift Card
and more, right from the Starbucks App.



Apple and the Apple logo are trademarks of Apple Inc.,
registered in the U.S. and other countries. App Store is a
service mark of Apple Inc.

Google Play is a trademark of Google Inc.

Have a question about your eGift? We're here to help. Click **here** to access our customer
support tools.
Feel free to **email us** or call 1-800-782-7282 from 5AM – 8PM (PST) Mon-Fri and 6AM –
4PM (PST) Sat-Sun.
Please have your order number **CND7D9SJ32** handy.

**From:** Winefsky, Josh S.
**Sent:** Monday, May 18, 2020 7:01 AM
**To:** Real Estate Paralegals <RealEstateParalegals@KRAMERLEVIN.com>
**Cc:** Neveloff, Jay A. <jneveloff@KRAMERLEVIN.com>; Canter, Jonathan H. <JCanter@KRAMERLEVIN.com>;
Heffernan, Deirdre <DHeffernan@KRAMERLEVIN.com>; Wachter, Julia L. <JWachter@KRAMERLEVIN.com>;
DeBare, Nicole <NDeBare@KRAMERLEVIN.com>; Serle, Meigan P. <MSerle@KRAMERLEVIN.com>
**Subject:** Remote Closings Reminders
**Importance:** High

Morning all,

Given Pam's return and Mike's potentially limited availability I wanted to take this opportunity to remind
everyone of the protocol that should be followed for remote closings, specifically as it relates to the escrow
instruction letter with the title company and wiring protocol.

What has become clear is that remote closings will be our new normal, at least for the next few months. This is
no longer a short-term fix – this is how we (and everyone in our industry) will be conducting business going
forward and we must be careful and mindful that we follow the process we have in place.

**ESCROW INSTRUCTION LETTER**

BIG PICTURE – for each closing our client's original documents are being delivered to the title company and out
of our physical control before the deal closes (with the exception of original partial releases). It is critical that
before this occurs, the applicable title company has signed our escrow instruction letter. Otherwise, there is
nothing that binds the title company to act at our direction. Worst case scenario – they could record the deed
before our client gets paid. Not good!

Key Items to Remember:

- _Under no circumstances should our client's documents be sent to the title company before we have a signed
  escrow letter._ NO EXCEPTIONS.
- The escrow letter contemplates attaching the closing statement. I know this is often not final until close to
  closing. It is **okay** to get the letter signed and have the documents delivered if the closing statement is not
  ready, but please remember to attach it once it is final.
- The supervising attorney on the project must sign the escrow instruction letter as well or authorize that a
  previously provided signature may be used.

Finally, if there are any comments made to our firm's standard escrow instruction letter, the supervising
attorney on the project must approve those changes.

1









YCrespo@kramerlevin.com

# What is the PSA date- 2WS#21A?

Crespo, Yajaira V.
Monday, Jun 8, 2020, 3:09 PM
1 recipient

Hi,

The PSA is not in the L drive.  What is the PSA date?

I need it to prepare the ACRIS.

Yajaira V. Crespo
Paralegal
-

***Kramer Levin is now working entirely remotely. Please do not send physical documents or checks to our office location. ***



YCrespo@kramerlevin.com

**Wefels, Michael**                                    Jun 10
Looks like 21A is not closing as schedu...      +1

**Crespo, Yajaira V.**
Wednesday, Jun 10, 2020, 11:23 AM
1 recipient

Hi Michael,

Emily asked if you received the escrow letter back for
this Friday closing (6/12).  She has to release the
documents by tomorrow if it's still closing. 😊

Yajaira V. Crespo
Paralegal

***Kramer Levin is now working entirely remotely.
Please do not send physical documents or checks to our
office location.***

OPEN MESSAGE



YCrespo@kramerlevin.com

# 1WS#28A & 1WS#28D- Review

**Crespo, Yajaira V.**
Tuesday, Jun 9, 2020, 11:34 AM
1 recipient

Hi Michael,

Please let me know if I can release #1WS#28A & #28D today?  Did you get a chance to review those closing statements?

Yajaira V. Crespo
Paralegal

***Kramer Levin is now working entirely remotely. Please do not send physical documents or checks to our office location. ***





YCrespo@kramerlevin.com

**Wefels, Michael**    Jun 10 +1 ↑

Looks like 21A is not closing as schedu...

**Crespo, Yajaira V.**
Wednesday, Jun 10, 2020, 11:23 AM
1 recipient

Hi Michael,

Emily asked if you received the escrow letter back for this Friday closing (6/12).  She has to release the documents by tomorrow if it's still closing.  😊

Yajaira V. Crespo
Paralegal

-

***Kramer Levin is now working entirely remotely.
Please do not send physical documents or checks to our office location.***

OPEN MESSAGE



YCrespo@kramerlevin.com

**Crespo, Yajaira V.**
Monday, Jun 15, 2020, 9:47 AM
1 recipient -1

Good Morning Shereen,

I hope you had an amazing weekend!

Do you have this PSA?

Also, let me know when you have some time to go over your daily routine so that I know what we need to do for coverage when you are out on maternity leave. 😀

Yajaira V. Crespo
Paralegal

***Kramer Levin is now working entirely remotely. Please do not send physical documents or checks to our office location.***

From: Crespo, Yajaira V.
Sent: Friday, June 12, 2020 4:11 PM
To: Wefels, Michael <mwefels@KRAMERLEVIN.com>; Famanila, Shereen Kay <SFamanila@KRAMERLEVIN.com>
Subject: 1WS#27C- PSA



Sure. 😊 Any time.

Yajaira V. Crespo
Paralegal

-

***Kramer Levin is now working entirely remotely. Please do not send physical documents or checks to our office location.***

OPEN MESSAGE

**Sausaitis, Pamela T.**
Monday, Jun 15, 2020, 3:54 PM
1 recipient

You replied to this message on Monday, Jun 15, 2020, 3:57 PM

Hi Yajaira,

I know it's a ways off yet, but could you cover for me 11/20, Friday? I'm organizing my schedule for when classes start. Dana will also be off that day. Let me know! And of course, if you ever need a day off, I'm here.



YCrespo@kramerlevin.com

## RE: Today

**Crespo, Yajaira V.**
Monday, Jun 15, 2020, 9:38 AM
1 recipient -9

Good Morning Michael,

I hope you are feeling well and had a great weekend. Please let me know if you need any assistance today with the closings. 😊

Please check in the closing statement for 20H @ 2WS so that I can see the tax computation page. Also, kindly send me the PSA to 1WS#27C so that I can work on that closing file.

Thanks

Yajaira V. Crespo
Paralegal

***Kramer Levin is now working entirely remotely. Please do not send physical documents or checks to our office location.***



YCrespo@kramerlevin.com

# RE: 2WS - Unit 25B - Closing 6/22/2020

**Crespo, Yajaira V.**
Wednesday, Jun 17, 2020, 11:55 AM
2 recipients -7

Hi Michael,

This PSA is not in the L Drive.  I took the PSA from the tracking sheet 🙂

Yajaira V. Crespo
Paralegal

***Kramer Levin is now working entirely remotely. Please do not send physical documents or checks to our office location. ***

OPEN MESSAGE





📧 ✉ 📅                                    N ⊙ ⁴ 📶 🔋 11:50 PM

← YCrespo@kramerlevin.com    📇    🗑    ⋮

**From:** Famanila Shereen Kay
<SFamanila@KRAMERLEVIN.com>       ✳ Date of my + termination
**Sent:** Thursday June 18 2020 11:04 AM
**To:** Wefels, Michael <mwefels@KRAMERLEVIN.com>;
Goldberg, Meryl <mgoldberg@KRAMERLEVIN.com>;
Holton, Dana <DHolton@KRAMERLEVIN.com>
**Cc:** Sausaitis, Pamela
<PSausaitis@KRAMERLEVIN.com> Crespo, Yajaira V
<YCrespo@KRAMERLEVIN.com>
**Subject:** Notes from Today's Condo Group Meeting

Hi Paras

Closings for next week are all Waterline Square units
so Jeri thinks that we can work on housekeeping
specifically on the PSAs:

> PSAs should be moved to the
> L Drive including Deal Sheets
> Amendments and/or assignments
> to PSAs should be moved as well and in
> one PDF only (insert before the PSA)

Pam/Yajaira

Please feel free to add if I'm missing something.

Thanks

*Kramer Levin is now working **entirely remotely**. Please
do not send physical documents **or checks** to our office*

◁          ○          □

Time Entry Report                                                                                                    Page 1 of 3

## Time Entry Report                                                                            

| Name   | Crespo, Yajaira V. |  |  | **Report Date** | 6/10/2020 |
|--------|-------------------|--|--|-----------------|-----------|
| Number | 19281 |  |  | **Report Period** | 6/1/2020 to 6/5/2020 |

| Date Worked | Client Name | Client Number | Matter Number | Worked Hours | Location | Task Code | Activity Code | Finalized | Index |
|---|---|---|---|---|---|---|---|---|---|
| 6/1/2020 | GID Development Group | 066613 | 066613-00006 ▶ | 1.90 | USNY02 |  |  | 6/4/2020 | 15585551 |

2WS#28A- Communicated via email and phone with the parties throughout the day. Called Fedex and client regarding the pending delivery of documents and confirmed that there was an unexpected delay @ Fedex. Confirmed to parties that the closing docs would be arriving the following day and not in time to close today.
1WS#31D- Verbally confirmed KL's wire instructions with the Title Closer for funding.
2WS#29H- Called paralegal to get broker's info and called broker to verbally confirm the wire instructions.
2WS#23K- Reviewed email regarding a 14 day extension request.
2WS#21K- Reviewed emails pertaining to the assignment request.

| 6/1/2020 | GID Development Group | 066613 | 066613-00015 ▶ | 5.10 | USNY02 |  |  | 6/4/2020 | 15585516 |

2WS#28A- Communicated with bank attorney regarding seller CD. Verified that the wire hit to parties. Reviewed various emails pertaining to today's escrow closing.
2WS#29H- Communicated with the Title Closer on indemnity letter. Reviewed emails pertaining to escrow closing.
2WS#31E- Reviewed emails pertaining to the upcoming escrow closing.
2WS#24H- Reviewed emails pertaining to the upcoming escrow closings.
1WS#28C- Reviewed PSA for terms to prepare closing documents, ACRIS and closing statements. Sent an email to the attorney for the name of the title company and the LLC member's SS#.
1WS#27A- Reviewed PSA for terms to prepare closing documents, ACRIS and closing statements. Emailed buyer's attorney for the Title Company information, and SS# for the buyers.
1WS#29D- Reviewed email from attorney asking for an affidavit to be signed to verify that there were no changes to the contract after execution.
2WS#20J- Sent email to attorney to confirm forwarding address for ACRIS and SS# for her client. Reviewed PSA, closing documents and closing statement for the preparation of ACRIS.
2WS#30H- Reviewed PSA, closing documents and closing statement for the preparation of ACRIS.

| 6/1/2020 | Office | 099999 | 099999-00026 ▶ | 0.60 | USNY02 |  |  | 6/4/2020 | 15585529 |

Client billing entries

| 6/1/2020 | Office | 099999 | 099999-00128 ▶ | 0.30 | USNY02 |  |  | 6/4/2020 | 15585523 |

Participated in zoom meeting hosted by Jay and Jonathan.

| 6/2/2020 | GID Development Group | 066613 | 066613-00006 ▶ | 2.80 | USNY02 |  |  | 6/4/2020 | 15585653 |

2WS#26H- Reviewed email regarding adjournment request.
1WS#27D- Reviewed emails regarding assignments of two PSAs for this transaction.
2WS#30H- Prepared ACRIS in connection with the Quit Claim Deed and sent with Member's List to parties.
2WS#26A & 26F- Reviewed email regarding Assignments to trust.
1WS#28E- Reviewed email regarding assignment
2WS#29H- Reviewed email regarding wire initiation.
2WS#28A- Reviewed emails regarding funding issues & return of wired funds back to buyer's attorney.
2WS#20J- Prepared ACRIS in connection with the Quit Claim Deed and forwarded to parties with the Members List.
1WS#28C- Prepared escrow letter and ACRIS in connection with the Quit Claim Deed and sent with Members List. Assembled closing documents for buyer's attorney.

| 6/2/2020 | GID Development Group | 066613 | 066613-00015 ▶ | 4.70 | USNY02 |  |  | 6/4/2020 | 15585619 |

2WS#30H- Prepared ACRIS documents for the sale portion of the transaction.
1WS#27A- Followed up with attorney for information needed to prepare the closing documents for this upcoming escrow closing. Completed closing statement.
2WS#20J- Followed up with attorney for information needed for ACRIS, received responses back and prepared ACRIS documents for the sale portion of the transaction.
1WS#29D- Reviewed another email regarding the lender's affidavit being requested.
2WS#21N- Reviewed PSA, closing documents and closing statement to prepare ACRIS documents.
1WS#27D- Reviewed PSA for terms in order to prepare closing statement, ACRIS and closing documents. Sent an email to Accounting to confirm amount held in escrow deposit.
1WS#28C-Followed up with attorney for information needed to prepare the closing documents for this upcoming escrow closing. Prepared closing statement, closing documents and ACRIS pertaining to the sale portion of the transaction.
2WS#21N- Prepared ACRIS in connection with the sale portion of this transaction.

Time Entry Report                                                                 Page 2 of 3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/2/2020 | Office | 099999 | 099999-00005 ▶ | 0.60 | USNY02 | 6/4/2020 | 15585577 |

Client billing entries.

| 6/2/2020 | Office | 099999 | 099999-00128 ▶ | 0.30 | USNY02 | 6/4/2020 | 15585575 |

Participated in zoom meeting hosted by Jay and Jonathan.

| 6/3/2020 | GID Development Group | 066613 | 066613-00006 ▶ | 3.60 | USNY02 | 6/5/2020 | 15586813 |

1WS#27D- Prepared closing documents, closing statement, ACRIS pertaining to the Quit Claim Deed w/ attached Members List & prepared escrow letter as it pertains to the escrow closing (additional work out of the ordinary). Followed up with Accounting Dept again for escrow balance. Confirmed that there are two assignment fees due as this PSA was assigned two times and the information for the final Assignee was requested for ACRIS preparation.

and the buyer's attorney was advised.
1WS#29B- Reviewed emails regarding adjournment request.
2WS#21M- Reviewed emails regarding adjournment request.
2WS#28A- Updated ACRIS in connection with the Quit Claim Deed to reflect the new closing date. Communicated with Title Closer, resent escrow letter for signature.

| 6/3/2020 | GID Development Group | 066613 | 066613-00015 ▶ | 3.70 | USNY02 | 6/5/2020 | 15586887 |

2WS#21N- Communicated with attorney regarding ACRIS signatures.
1WS#27D- Prepared closing documents, closing documents and received confirmation from Accounting Dept regarding escrow funds on account. Prepared ACRIS for the sale portion of this transaction. Released all closing documents to the Buyer's Attorney along with the client's organizational documents, wire instructions and consent for KL signatures.
1WS#27A- Reviewed and revised closing statement. Reviewed several emails. Received a confirmation that there is no SS# for the buyer.

Buyer's Attorney asked for a confirmation of the original deposit made by his client. Received information from Accounting Dept and forwarded to Buyer's Attorney.  Released all closing documents to the Buyer's Attorney along with the client's organizational documents, wire instructions and consent for KL signatures.
2WS#29H- Received a confirmation that the buyers don't have a SS#. Reviewed emails.
2WS#21M- Reviewed PSA, Closing Documents and Closing Statement for information needed for ACRIS preparation.
2WS#24H- Reviewed PSA, Closing Documents and Closing Statement for information needed for ACRIS preparation.
2WS#28A- Updated ACRIS to reflect new closing date.
2WS#29H- Resent ACRIS to the Title Closer pertaining to the sale portion of this transaction.

| 6/3/2020 | Office | 099999 | 099999-00026 ▶ | 0.50 | USNY02 | 6/5/2020 | 15586819 |

Client billing entries review.

| 6/3/2020 | Office | 099999 | 099999-00128 ▶ | 0.60 | USNY02 | 6/5/2020 | 15586814 |

Participated in group Orange loop up meeting hosted by Jamie Porco.

| 6/3/2020 | Office | 099999 | 099999-00128 ▶ | 0.70 | USNY02 | 6/5/2020 | 15586818 |

Participated in Town Hall Meeting and completed survey as requested by Managing Partners regarding the COVID experience.

| 6/4/2020 | GID Development Group | 066613 | 066613-00006 ▶ | 5.40 | USNY02 | 6/8/2020 | 15590661 |

1WS#28C- Reviewed adjournment request from attorney due to new financing being obtained.
1WS#27A and 1WS#27C- Communicated with parties regarding adjournment requests.

2WS#24H and 2WS#21M- Prepared ACRIS in connection with the Quit Claim Deeds and sent via email along with the members list to the parties.
Reviewed emails and followed up on the signed escrow letters for 2WS#21M, 20J, 21M, 24H , #21N & 30H & 1WS#27D.  For unit #27D @ 1WS- also left several messages for letter.
2WS#28A- Communicated with parties regarding new closing date and to verify that the title company has the originals in hand already.
2WS#20J-Received executed escrow letter. Communicated with client to confirm address for originals to be released to title closer.
Followed up with client to verify the closings that are confirmed, which escrow letters were returned and which original documents to release (2WS #30H, 20J, 21M, 24H, 25J, 23E. 21N, 21B & 21A and also 1WS#27D).
1WS#29D-Reviewed emails for new closing date. Revised ACRIS to reflect the new closing date in connection with the quit claim deed and resent.

Time Entry Report

2WS#25J- Reviewed PSA, closing statement and closing documents to prepare the ACRIS documents.

| 6/4/2020 | GID Development Group | 066613 | 066613-00015 ▶ | 2.20 | USNY02 | 6/8/2020 | 15590633 |
|---|---|---|---|---|---|---|---|

2WS#24H- Reviewed PSA, closing documents and closing statement and prepared ACRIS in connection with the sale and sent via email to parties.
1WS#29D- Revised closing date on ACRIS for the sale portion of this transaction.
2WS#29H- Resent ACRIS documents to Title Closer.
2WS#21M- Reviewed PSA, closing documents and closing statement and prepared ACRIS in connection with the sale and sent via email to parties.

| 6/4/2020 | Office | 099999 | 099999-00005 ▶ | 0.20 | USNY02 | 6/8/2020 | 15590669 |
|---|---|---|---|---|---|---|---|

Updated notes for team sharing.

| 6/4/2020 | Office | 099999 | 099999-00026 ▶ | 0.50 | USNY02 | 6/8/2020 | 15590663 |
|---|---|---|---|---|---|---|---|

Reviewed notes and entered client billing.

| 6/5/2020 | GID Development Group | 066613 | 066613-00006 ▶ | 5.40 | USNY02 | 6/8/2020 | 15590710 |
|---|---|---|---|---|---|---|---|

Reviewed PSA to see the terms for 1WS#28A & 1WS#28D I order to prepare the closing statements, closing documents, ACRIS and Escrow letters (additional work in regards to escrow closings).
Reviewed email regarding adjournment request for 2WS#27C.
Sent follow up emails throughout the day for executed escrow letters: 2WS#20H, 21M & 1WS#27D.
Reviewed emails regarding funding arrangement for 2WS#30H & communicated with parties.
2WS#28A & #20L- reviewed emails regarding wires being initiated.
1WS#27D- Resent escrow letter to the Title Closer. Received signed escrow letter back.
2WS#21M & 1WS#27D- For both, reviewed closing schedule and PSA to see if there are any adjournments remaining to be used. Communicated with the attorneys on both regarding their request to adjourn.
Spoke with the buyer's attorney for 2WS#21N's upcoming escrow closings to go over logistics and wire instructions and amount total to be wired.
2WS#30H- Communicated with parties regarding funding logistics. Asked parties to decide if the title company is sending the wire or the buyer's attorney. Received signed escrow letter, authorized release of original documents and Sent Tracking information for FedEx. Asked broker to send wire instructions.
1WS#27D, & 2WS#25J and #23J- confirmed adjournments to client.
Sent emails to Accounting Dept to verify the balances on deposit for 1WS#28D & #28A.

| 6/5/2020 | GID Development Group | 066613 | 066613-00015 ▶ | 1.00 | USNY02 | 6/8/2020 | 15590717 |
|---|---|---|---|---|---|---|---|

2WS#21N- Communicated with attorney for SS# for his clients and updated the transfer tax forms in connection with the sale. Emailed to parties. Discussed questions regarding move in procedure and form.
1WS#29D- Reviewed email regarding tax contin findings.
Reviewed Schedule A & the commissions statement to gather information needed for the completion of the closing documents for 1WS#28A & #1WS#28D.

| 6/5/2020 | Office | 099999 | 099999-00026 ▶ | 0.70 | USNY02 | 6/8/2020 | 15590719 |
|---|---|---|---|---|---|---|---|

Entered client billing information

| Final Total | | | | 40.80 | | | |
|---|---|---|---|---|---|---|---|

**From:**                     Managing Partners
**Sent:**                     Monday, June 15, 2020 9:12 AM
**To:**                       Spilko, Howard T.; Schoeman, Paul H.
**Subject:**                  Juneteenth – June 19

All New York and Silicon Valley (via bcc):

This Friday, June 19, Kramer Levin will observe Juneteenth as a firm holiday. On June 19, 1865, more than two years after the Emancipation Proclamation, Union Army soldiers landed at Galveston, Texas, with news that enslaved people were free. Juneteenth is the oldest nationally celebrated commemoration of the ending of slavery in the United States, and it was designated a commemorative holiday by New York State in 2004. It has now been recognized in nearly every state.

We hope this day will provide all of us with an opportunity to take a break from our daily routines and reflect on issues of racial injustice in our society.

- Paul and Howard

1

YCrespo@kramerlevin.com

**From:** Famanila, Shereen Kay
<SFamanila@KRAMERLEVIN.com>
**Sent:** Monday, June 15, 2020 10:40 AM
**To:** Wefels, Michael <mwefels@KRAMERLEVIN.com>
**Cc:** Crespo, Yajaira V <YCrespo@KRAMERLEVIN.com>
**Subject:** FW: Juneteenth - June 19

Hi Mike

We have 2 closings on Friday. Units 28H and 20K for
2WS. Just a heads up.

Thanks

**From:** Managing Partners
<ManagingP...LEVIN.com>
**Sent:** Monday, June 15, 2020 9:12 AM
**To:** Spilko, Howard T. <hspilko...LEVIN.com>;
Schoeman, Paul H.
<PSchoeman@KRAMERLEVIN.com>
**Subject:** Juneteenth - June 19

All New York and Silicon Valley (via bcc):

This Friday, June 19, Kramer Levin will observe Juneteenth
as a firm holiday. On June 19, 1865, more than two years
after the Emancipation Proclamation, Union Army soldiers
landed at Galveston, Texas, with news that enslaved people
were free. Juneteenth is the oldest nationally celebrated
commemoration of the ending of slavery in the United
States, and it was designated a commemorative holiday by



YCrespo@kramerlevin.com

Crespo, Yajaira V.
Monday, Jun 15, 2020, 11:03 AM
2 recipients

He was
CC'd
✗

Hi Shereen,

Michael called to say that he's keeping these two closings on for Friday. He's handling them.

I'm observing the holiday. It's so great that the firm is acknowledging such a historic day 😊

Yajaira V. Crespo
Paralegal

***Kramer Levin is now working entirely remotely. Please do not send physical documents or checks to our office location. ***

From: Famanila, Shereen Kay
<SFamanila@KRAMERLEVIN.com>
Sent: Monday, June 15, 2020 10:40 AM
To: Wefels, Michael <mwefels@KRAMERLEVIN.com>
Cc: Crespo, Yajaira V <YCrespo@KRAMERLEVIN.com>

# RE: Closings for Today, 6/15

 **Famanila, Shereen Kay**

Monday, Jun 15. 2020. 1.46 PM

7 recipients

Good afternoon,

The units highlighted in yellow have been added to the closings for today:

| DATE | CLIENT DETAILS | | | CLIENT / PURCHASER | HOST / EXT | NOTES |
|---|---|---|---|---|---|---|
| | UNIT | BLDG | CLIENT/MATTER# | | | |
| 06, 15. Monday | 25D | One Waterline Square | 066613-00015 | Helen Little | Michael Wefels~ / 7594 | Closing in Escrow |
| | 28A | One Waterline Square | 066613-00015 | Dong Chen | Michael Wefels. / 7594 | Closing in Escrow |
| | 24J | Two Waterline Square | 066613-00015 | AL.JOES 24J, LLC | Michael Wefels / 7594 | Closing in Escrow |
| | 22H | Two Waterline Square | 066613-00015 | Brian Callahan | Michael Wefels / 7594 | Closing in Escrow |
| | 22A | Metro | 066608-00016 | METRO 22A LLC | Michael Wefels / 7594 | Closing in Escrow |

Thanks.

OPEN MESSAGE





# Hi!

**Crespo, Yajaira V.**
Tuesday, Jun 16, 2020, 4:27 PM
1 recipient

Hi Dan,

I hope you and the family are well. 😊

I'd like to participate in the initiatives you briefly mentioned this morning. I recently signed up to assist with the Veteran Initiative. I'd like to do more. Please count me in.

Thanks

Yajaira V. Crespo
Paralegal

-

***Kramer Levin is now working entirely remotely. Please do not send physical documents or checks to our office location.***



N □ ⁴⁺ 11:53 PM

← YCrespo@kramerlevin.com

# RE: NYC Business Solutions - Small Business Clinic

✓ **Crespo, Yajaira V.**
Wednesday, Jun 17, 2020, 1:59 PM
2 recipients

Hi Eva and Colin,

I'm interested.  Please add me to the list of helpers ☺

Yajaira V. Crespo
Paralegal

-

***Kramer Levin is now working entirely remotely. Please do not send physical documents or checks to our office location.***

**From:** Tanna, Eva <ETanna@KRAMERLEVIN.com>
**Sent:** Wednesday, June 17, 2020 12:18 PM
**To:** Racial Justice Initiative <RacialJusticeInitiative@KRAMERLEVIN.com>
**Cc:** Bumby, Colin <CBumby@KRAMERLEVIN.com>
**Subject:** NYC Business Solutions - Small Business Clinic

All –



Accepted: Condo Te...

Accepted:

**Yajaira V. Crespo**
YCrespo@KRAMERLEVIN.com
* last zoomed participated in

Thursday, June 18
**10:15 – 10:45 AM (30 minutes)**
*This event occurs in the past*

This occurrence is an exception to a series

https://us02web.zoom
.us/j/41229953572?pwd=
VFJ3YzJtWDI3TThiRXE5cWJNZ0x3Zz09

15 minutes (Notification)



INBOX

Your account YCrespo@kramerlevin.com can't be authenticated. Update your account settings and try again.

**THURSDAY, JUNE 18, 2020**

Cuevas, Emily, Crespo, Yajaira V.   Thu   11:17 AM
[EXTERNAL] RE: Closings this week - Thank you s...

Arnold, Cindy B.   Thu   11:14 AM
Accepted: call will Cindy

Sausaitis, Pamela T., Famanila,...   Thu   11:13 AM
Re: Notes from Today's Condo Group Meeting - T...

Anna NASH, Wefels, Michael, F...   Thu   11:03 AM
[EXTERNAL] RE: Robur LLC (du Plessis) from...

Wefels, Michael   Thu   10:49 AM
RE: 2WS - Unit 25J - Closing 6/24/2020 - Attac...

Crespo, Yajaira V., Wachter, Juli...   Thu   10:39 AM
FW: 1WS#27A- Closing Documents for escrow cl...

Crespo, Yajaira V., Jeanette Ch...   Thu   10:28 AM

# Kramer Levin



**Cindy Arnold**
Chief Human Resources Officer,
Managing Director
T 212.715.9371
F 212.715.7719
carnold@kramerlevin.com

1177 Avenue of the Americas
New York, NY 10036
T 212.715.9100
F 212.715.8000

December 6, 2019

Via Email
Yajaira Crespo (jadeli.management@gmail.com

Re:   Employment Offer Summary Terms

Dear Yajaira:

It is a pleasure to offer you a position to join our firm as a full-time Real Estate Paralegal.  It is my understanding you will commence employment on Monday, Monday, January 6, 2020, at which time please report to the Human Resources Department for orientation.  Orientation begins at 9:30 am and is held on the 23rd floor.  We are located at 1177 Avenue of the Americas (between 45th & 46th streets).  You will need to bring a picture ID for lobby security on your first day.  I would like to take this opportunity to summarize the initial terms and conditions of your employment.

| Department: | Real Estate |
|---|---|
| Job Title: | Paralegal |
| Start Date: | Monday, January 6, 2020 |
| Shift/Hours: | Monday – Friday / 9:30 – 5:30 PM |
| Starting Salary: | $87,000 per annum. Evaluations are delivered annually, generally in January. You are eligible to receive discretionary bonuses annually in accordance with and subject to the Firm's policies. You will eligible for a salary review in January of 2021. |
| Overtime: | You are eligible for overtime. |
| Vacation: | Four weeks plus two personal days (prorated by date of hire and accrued monthly). |
| Health Insurance: | Choice of coverage between Oxford Health Plans or EmblemHealth along with Cigna Dental. Employee contribution required. Medical and dental coverage begins the first of the month following the month you join the firm, February 1, 2020. |
| Life Insurance: | $50,000 |

**Notice and Acknowledgement of Pay Rate and Payday**

**Under Section 195.1 of the New York State Labor Law**

Notice for Employees Paid a Weekly Rate or a Salary for a Fixed Number of Hours (40 or Fewer in a Week)

## 1. Employer Information

Name: Kramer Levin Naftalis & Frankel LLP

Doing Business As (DBA) Name(s): N/A

FEIN (optional): 13-1944339

Address:
1177 Avenue of the Americas
New York, NY 10036

Mailing Address:
(Same as above)

Phone: (212) 715-9100

## 2. Notice given:

☒ At hiring
☐ On or before February 1
☐ Before a change in pay rate(s),
   allowances claimed or payday

LS 56 (03/11)

## 3. Employee's Pay Rate:

$87,000.00 annually

Weekly hours 35 (Specify the number of hours for which the weekly rate or salary will be paid.)

## 4. Allowances taken:

☒ None
☐ Tips _____ per hour
☐ Meals _____ per meal
☐ Lodging _____
☐ Other _____

## 5. Regular payday: 15th & 30th of each month

## 6. Pay is:

☐ Weekly
☐ Bi-weekly
☒ Other semi-monthly

## 7. Overtime Pay Rate:

$ 71.70 per hour for hours in excess of 40 in any week.

$ 47.80 per hour for hours in excess of 35 hours up to 40 in any week.

## 8. Employee Acknowledgement:

On this day, I have been notified of my pay rate, overtime rate (if eligible), allowances, and designated payday. I told my employer what my primary language is.

Check one:

☒ I have been given this pay notice in English because it is my primary language.

☐ My primary language is _____. I have been given this pay notice in English only, because the Department of Labor does not yet offer a pay notice form in my primary language.

_____
Employee Signature

1/6/2020
Date

Cindy B. Arnold, Chief HR Officer, Managing Director
Preparer Name and Title

The employee must receive a signed copy of this form. The employer must keep the original for 6 years.

Name (print): Yajaira Crespo



**Yajaira Crespo**
December 6, 2019
Page 2

Pension Plans:

Profit Sharing Retirement Plan – Vesting Schedule

| Years of Service | Vesting Percentage |
|------------------|--------------------|
| 0 – 3            | 0%                 |
| 3 or more        | 100%               |

Savings & Investment Plan (401(k)) – You will be automatically enrolled in the Kramer Levin 401(k) as of March 1, 2020 at 3%. You will have the option to choose a different percentage or opt out.

Other Benefits:

Short-Term Disability, Long-Term Disability, Business Travel & Accident, Accidental Death & Dismemberment, Flexible Spending Account, Health Spending Account, Pre-Tax Transportation, Dependent Care, Voluntary Vision, etc.(in accordance with the firm's current policies for non-legal staff).

Please understand that your employment may be terminated by you or the firm at will and the firm reserves the right to modify benefits or terms of employment at anytime. The benefits summaries above are for your interest, however, the full legal description of the benefit plans are available for your review and set forth the precise terms and conditions of each of the Firm's benefit plans.

Sincerely,

Cindy B. Arnold
Chief Human Resources Officer,
Managing Director

CBA:ddc
Attachments

**DeCongelio, Dorothy**

| | |
|---|---|
| **From:** | HR |
| **Sent:** | Friday, December 27, 2019 3:38 PM |
| **To:** | NES_AllEmp_HireDate; NES_AllEmp_Location; NES_AllEmp_Title; NES_AllEmp_NameChange; NES_AllEmp_SecID; NES_AllEmp_Status; NES_AllEmp_Dept; NES_AllEmp_RetroHireDate; NES_AllEmp_Cell; NES_AllEmp_ClassYear; NES_AllEmp_Position |
| **Subject:** | New Hire Announcement |

| | |
|---|---|
| *Name:* | **Yajaira Crespo** |
| *EmployeeID:* | **19281** |
| *Preferred Name for Business Cards:* | |
| *Business Title for Business Cards:* | |
| *Preferred Name for EMail:* | **Crespo, Yajaira** |
| *Title:* | **Paralegal** |
| *Position:* | **Staff** |
| *Department:* | **Real Estate** |
| *Location:* | |
| *Security Badge ID:* | **02238 3+12004080019 11102029509-1 SE** |
| *Office:* | **New York** |
| *Effective Date:* | **1/6/2020 12:00:00 AM** |
| *Status:* | **Full Time Employee** |
| *Exempt Status:* | **Non-Exempt** |
| *Shift:* | **9:30 - 5:30** |
| *Phone:* | |
| *EFax:* | |
| *Smartphone #:* | |
| *Cell #:* | |
| *Comments:* | |


**Kramer Levin**

| For HR Use Only | | | |
|---|---|---|---|
| Offer Letter | | BG Check | |
| EAS (Office/ID) | | Addition Notice | |
| Personnel Folder | | Welcome Email | |
| DayForce Link | | Orientation | |
| I9 Complete | | New Hire Reported | |
| Benefits Recap | | Seamless | |
| Wage Works | | VIP Card (Atty Only) | |
| Benefits Enrollments | | | |

## EMPLOYEE ADDITION NOTICE

| Employee Name: | CRESPO | YAJAIRA | |
|---|---|---|---|
| | Last | First | Middle |

| 19281 | | 02238 | |
|---|---|---|---|
| **Employee ID** | **Social Security #** | **Build ID Card #** | |

| Hire Date: | 01 | 06 | · 2020 |
|---|---|---|---|
| | Month | Day | Year |

| Probation Ends: | | | |
|---|---|---|---|
| | Month | Day | Year |

**Department Name:**   REAL ESTATE

**Job Title:**   PARALEGAL

**Employee Status:**   ☒ Full Time (FT)    ☐ Part Time (PT)    ☐ Freelance (FL)

**FLSA:**   ☐ Exempt    ☒ Non-Exempt

**Salary:**   $87,000.00

**Hours Per Week:**   35        Shift:
                                 9:30-
                                 5:30

**Source of Hire:**

**Referred by:**

| Office Telephone | Floor | Room Number |
|---|---|---|
| 212-715- | 27 | 27 40A |

_____

**DIRECTOR OF HUMAN RESOURCES**

KL4 21953554.4

**Yajaira V. Crespo - Colon**
**Adam Personnel, Inc.**
**212-557-9151**

## EDUCATION:

**Monroe College        Bronx, NY        August 2008**
Bachelor of Business Administration
Major: Business Management
Minor: Finance
GPA: 3.92, Graduated with high honors

## PROFESSIONAL EXPERIENCE:

**JOHN B. LOVETT & ASSOCIATES, LTD.        August 2010 - Current**
Transfer Agent/Closing Agent
- Receive and review board applications submitted for purchase, transfer, sublet, leasing of condominiums and cooperatives. Ensure that all required documents and fees are received before sending the submission for board review and consideration.
- Communicate with Brokers/Shareholders/Unit Owners/Applicants for pending transactions.
- Review refinance applications and ensure that all loan documents are correct.
- Act as Liaison between Board Members/Board of Directors and Shareholders/Subtenants/Tenants/Applicants/Attorneys.
- Communicate with the Building Attorneys for transfers and sales.  Also, follow up for Shareholders/Unit Owners in legal ensuring that all arrears and legal fees are collected prior to closing/transfer.
- Prepare closing documents and conduct closings as Closing Agent.
- Process all move-ins and move-outs by ensuring that all fees/deposits are received, Certificates of Insurance from the movers are provided & correct, coordinate move dates/furniture deliveries scheduled with Superintendents and Shareholders/Sellers/Subtenants/Tenants.
- Prepare form letters to Shareholders/Unit Owners.
- Process payments received at closings. Update new Shareholder/Unit Owner/Subtenant/Tenant.
- Review all loan documents associated with refinance applications and update the shareholder accounts.

**CHARLES H. GREENTHAL MANAGEMENT        July 2007-August 2010**
Transfer Agent/Executive Assistant
- Supported Department Director.  Responsibilities included data entry and preparation of form letters/memorandums/closing documents for purchase/transfer of luxury condominiums and cooperatives.
- Participated in real estate closings as Closing Agent.
- Act as Liaison between Board Members/Board of Directors, Director of the Closing Department, Shareholders/Unit Owners and Purchase/Sublease/Lease Applicants.
- Received and review Board Applications submitted for the purchase and sublet/lease of luxury condominiums and cooperatives. Ensure that all required documents and fees are collected.
- Reviewed all loan documents associated with refinance applications and update the shareholder accounts.

- Processed payments of all fees and prepare memorandums with instructions sent to the Accounting Department for final processing.
- Attended annual Board meetings and assisted with elections.

**THE CORINTHIAN**          **(Temp- Assignment)**          **April 2007 - May 2007**
Administrative Assistant
- Supported Office Manager. Responsibilities included data entry and preparation of form letters and memorandums.
- Answered and screened incoming calls, general duties as assigned.

**RABINE REALTY CORP.**          **November 1994-March 2007**
Executive Assistant/Office Manager
- Supported two Senior Partners. Handled all administrative functions such as preparing correspondence, scheduling travel arrangements and interoffice meetings.
- Prepared dispossess requests, lease renewal increase request and arrears reports for Attorneys, the Department of Social Services and the NYCHA Section 8 program.
- Supervised clerical staff.
- Assisted with tenant related inquiries.
- Monitored 300 rental accounts and updated tenant accounts.
- Processed rental payments for daily banking.
- Handled and processed all lease cancellations and renewals.
- Processed accounts payable for supplies and equipment.
- Translated work orders in Spanish for non-English speaking tenants and/or repairmen.
- Answered and screened incoming calls, ordered office supplies, general duties as assigned.

**TECHNICAL & LANGUAGE SKILLS:**
- MS Word, MS Excel, MS PowerPoint, Outlook, Leasehold, Factor, BJ Murray and Filepro.
- Bilingual- English/Spanish.
- CPR Training completed in March 2009, received certificate of completion.
- Notary Public as of August 2009.

26 Nov 2008

Ydalra Crespo
2029 Briggs Avenue, Apt. 1D
Bronx NY 10458
0082601

| COURSE | Courses Title | GRD | ACRD | CCRD | GRDPT |
|---|---|---|---|---|---|
| Transfer Credit: | | | | | |
| Lehman College - CUM 0058049 | | | | | |
| LA-930 | HUMANITIES ELECT | TR | 3 | 3 | 0.00 |
| SC-910 | BIOLOGY ELECTIVE | TR | 3 | 3 | 0.00 |
| MG-101 | INTRO TO BUSINESS | TR | 3 | 3 | 0.00 |
| EN-116 | WOMEN WRITERS | TR | 3 | 3 | 0.00 |
| Transfer Credit | | CUM | 12 | 12 | 0.00 |

Winter '04
AAS.BUSINESS.ADMIN

| AC-101 | PRINCIPLES OF ACCOUNTIN | A | 3 | 3 | 12.00 |
|---|---|---|---|---|---|
| CP-101 | INTRO COMPUTER PRO | A | 3 | 3 | 12.00 |
| EN-101 | EXPOSITORY WRITING | A | 3 | 3 | 12.00 |
| MA-130 | INTERMEDIATE ALGEBRA | A | 3 | 3 | 12.00 |
| | | TOT | 12 | 12 | 48.00 |
| | | CUM | 24 | 24 | 48.00 |
| | | SEMESTER AVG | | | 4.00 |
| | | CUMULATIVE AVG | | | 4.00 |

President's List

Fall 04
AAS.BUSINESS.ADMIN

| BU-201 | MACROECONOMICS | A | 3 | 3 | 12.00 |
|---|---|---|---|---|---|
| MA-140 | COLLEGE ALGEBRA WITH AP | A | 3 | 3 | 12.00 |
| CP-125 | ELECTRONIC SPREADSHEET | A | 3 | 3 | 12.00 |
| MG-201 | PRINCIPLES OF MANAGEMEN | A | 3 | 3 | 12.00 |
| | | TOT | 12 | 12 | 48.00 |
| | | CUM | 36 | 36 | 96.00 |
| | | SEMESTER AVG | | | 4.00 |
| | | CUMULATIVE AVG | | | 4.00 |

President's List

Winter 05
AAS.BUSINESS.ADMIN

| BA-101 | BUSINESS LAW I | A | 3 | 3 | 12.00 |
|---|---|---|---|---|---|
| EN-110 | Composition & Literatur | B+ | 3 | 3 | 10.50 |
| MG-216 | LABOR RELATIONS | A | 3 | 3 | 12.00 |
| MK-101 | MARKETING | A | 3 | 3 | 12.00 |
| | | TOT | 12 | 12 | 46.50 |
| | | CUM | 48 | 48 | 142.50 |
| | | SEMESTER AVG | | | 3.87 |
| | | CUMULATIVE AVG | | | 3.95 |

President's List

| EN-205 | BUSINESS WRITING | A | 3 | 3 | 12.00 |
|---|---|---|---|---|---|

| COURSE | Course Title | GRD | ACRD | CCRD | GRDPT |
|---|---|---|---|---|---|
| MG-211 | HUMAN RESOURCE MANAGEME | A | 3 | 3 | 12.00 |
| MK-342 | CONSUMER BEHAVIOR | A | 3 | 3 | 12.00 |
| MK-201 | ADVERTISING | A | 3 | 3 | 12.00 |
| | | TOT | 12 | 12 | 46.00 |
| | | CUM | 60 | 60 | 190.50 |

Fall 05
AAS.BUSINESS.ADMIN

| | | CUMULATIVE AVG | | | 3.96 |
|---|---|---|---|---|---|

President's List

Degree Received: Assoc - Appl Science on 12/05
Date Conferred: 12/16/05
Majors.........: Business Administration
Minors.........:

| Transfer Credit: | | | | | |
|---|---|---|---|---|---|
| CLEP EXAM | 0079726 | | | | |
| SP-101 | SPANISH I | TR | 3 | 3 | 0.00 |
| SP-102 | Spanish II | TR | 3 | 3 | 0.00 |
| Transfer Credit | | CUM | 66 | | 190.50 |

| FA-302 | PRINCIPLES OF FINANCE | A | 3 | 3 | 12.00 |
|---|---|---|---|---|---|
| MA-145 | STATISTICS FOR BUS. DEC | A | 3 | 3 | 12.00 |

Winter 07
BBA.BUSINESS.MGMT

| | | TOT | 6 | 6 | 24.00 |
|---|---|---|---|---|---|
| | | CUM | 72 | 72 | 214.50 |
| | | SEMESTER AVG | | | 4.00 |
| | | CUMULATIVE AVG | | | 3.97 |

President's List

| AC-162 | Prin. of Account II | A | 3 | 3 | 12.00 |
|---|---|---|---|---|---|
| BF-220 | Technology of Presenta | A | 3 | 3 | 12.00 |
| FA-304 | MONEY AND BANKING | B+ | 3 | 3 | 10.50 |
| MG-240 | INTERNATIONAL BUSINESS | A | 3 | 3 | 12.00 |

Spring 07
BBA.BUSINESS.MGMT

| | | TOT | 12 | 12 | 46.50 |
|---|---|---|---|---|---|
| | | CUM | 84 | 84 | 261.00 |
| | | SEMESTER AVG | | | 3.87 |

EXPLANATION:  COURSE NUMBER, COURSE TITLE, GRADE, CREDITS ATTEMPTED, CREDITS EARNED, QUALITY POINTS

## UNOFFICIAL TRANSCRIPT

MONROE COLLEGE
Monroe College Way
Bronx, New York 10468
(718) 933-6700

MONROE COLLEGE
OFFICE OF THE
REGISTRAR

## GRADING SYSTEM

| A | EXCELLENT |
|---|---|
| B+ | ABOVE AVERAGE |
| B | ABOVE AVERAGE |
| C+ | AVERAGE |
| C | AVERAGE |
| D+ | PASSING |
| D | PASSING |
| F | FAILURE |
| AW | ADMINISTRATIVE WITHD |
| I | INCOMPLETE |
| W | OFFICIAL WITHDRAW |
| P | PASS |
| R | REPEAT |
| AU | AUDIT |

Only grades of A, B+, B, C+, C, D+ and AW are computed in the Quality Points Average (Q.P.A.)

*Course repeated. Only the higher grade is computed in the cumulative Q.P.A.

Student is in good standing unless otherwise indicated.

# Monroe College

Upon the recommendation of the Board of Trustees and the Faculty

has conferred on

Najaira Crespo

the Degree of

## Bachelor of Business Administration
Summa Cum Laude
in

## Business Management

and has granted this Diploma in the City of New York as evidence thereof.

August 7, 2008



Vice President for Academics





President



| Employee Name: | Yajaira V Crespo | Pay Date: | 6/30/2020 |
|---|---|---|---|
| Employee #: | 19281 | Pay Period: | 6/1/2020 - 6/15/2020 |
| Employee Address: | 309 Surf Drive | Deposit Advice #: | 327729636 |
| | Bronx, NY 10473 | Pay Frequency: | Semi-Monthly |
| Department: | Real Estate Paralegal | Federal Filing Status: | Single |
| Job Title: | Paralegal | Federal 2c/Extra Withholding: | No/$0.00 |
| | | Local Exemptions: | 0 (New York City) |
| | | State Filing Status: | Single (NY) |
| | | State Exemptions: | 0 (NY) |

| Employer Name: | Kramer Levin Naftalis & Frankel LLP |
|---|---|
| Employer Phone: | (212) 715-9100 |
| Employer Address: | 1177 Avenue of the Americas |
| | New York, NY 10036 |

| | Current 6/1/2020 - 6/15/2020 | | | YTD As of 6/15/2020 | |
|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | Amount |
| | 78.72 | | $3,782.92 | 912.38 | $43,687.11 |
| **Earnings** | | | | | |
| Regular | 21.00 | | $1,003.89 | 835.30 | $39,930.89 |
| Overtime 1.5 | 0.83 | | $59.76 | 2.98 | $213.93 |
| Additional Reg | 7.88 | | $376.86 | 25.10 | $1,199.88 |
| Vacation | 49.00 | | $2,342.41 | 49.00 | $2,342.41 |
| **Pre-Tax Deductions** | | | $113.49 | | $1,348.22 |
| TChek | | | | | $450.00 |
| 401K % | | | $113.49 | | $898.22 |
| **Taxes** | | | $1,145.59 | | $13,045.47 |
| Fed W/H | | | $518.19 | | $5,855.13 |
| FICA EE | | | $234.54 | | $2,680.70 |
| Fed MWT EE | | | $54.85 | | $626.94 |
| NY W/H | | | $193.79 | | $2,228.58 |
| NY FLIT | | | $10.21 | | $117.96 |
| NYCCINW/H | | | $134.01 | | $1,536.16 |
| | Routing # | Account # | Amount | | Amount |
| | | | $2,523.84 | | $29,293.42 |
| **Net Pay** | | | | | |
| Direct Deposit | 096017418 | XXXXXXXXXXX3256 | $400.00 | | |
| Direct Deposit | 011001234 | XXXXXXXX3200 | $100.00 | | |
| Direct Deposit | 021000021 | XXXXX8064 | $2,023.84 | | |

**Messages from your Employer**
Pay Period listed above applies to Overtime Only. Salary is paid current according to Pay Date.

CERIDIAN

 **Kramer Levin**

| Employee Name: | Yajaira V Crespo | Pay Date: | 6/15/2020 |
|---|---|---|---|
| Employee #: | 19281 | Pay Period: | 5/16/2020 - 5/31/2020 |
| Employee Address: | 309 Surf Drive | Deposit Advice #: | 324875032 |
| | Bronx, NY 10473 | Pay Frequency: | Semi-Monthly |
| Department: | Real Estate Paralegal | Federal Filing Status: | Single |
| Job Title: | Paralegal | Federal 2c/Extra Withholding: | No/$0.00 |
| | | Local Exemptions: | 0 (New York City) |

| Employer Name: | Kramer Levin Naftalis & Frankel LLP | State Filing Status: | Single (NY) |
|---|---|---|---|
| Employer Phone: | (212) 715-9100 | State Exemptions: | 0 (NY) |
| Employer Address: | 1177 Avenue of the Americas New York, NY 10036 | | |

| | Current 5/16/2020 - 5/31/2020 | | | YTD As of 5/31/2020 | |
|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | Amount |
| **Earnings** | 81.05 | | $3,879.56 | 833.67 | $39,904.19 |
| Regular | 75.83 | $15.54 | $3,625.00 | 814.30 | $38,927.00 |
| Overtime 1.5 | 0.22 | | $239.02 | 2.15 | $154.17 |
| Additional Reg | 5.00 | | $116.39 | 17.22 | $823.02 |
| | | | | | $1,234.73 |
| **Pre-Tax Deductions** | | | | | $450.00 |
| TChek | | | $116.39 | | $784.73 |
| 401K % | | | $1,183.88 | | $11,899.88 |
| **Taxes** | | | $538.81 | | $5,336.94 |
| Fed W/H | | | $240.53 | | $2,446.16 |
| FICA EE | | | $56.26 | | $572.09 |
| Fed MWT EE | | | $199.80 | | $2,034.79 |
| NY W/H | | | $10.48 | | $107.75 |
| NY FLIT | | | $138.00 | | $1,402.15 |
| NYCCityW/H | | | | | |

| | Routing # | Account # | Amount | | Amount |
|---|---|---|---|---|---|
| **Net Pay** | | | $2,579.29 | | $26,769.58 |
| Direct Deposit | 096017418 | XXXXXXXXXXX3256 | $400.00 | | |
| Direct Deposit | 011001234 | XXXXXXXX3200 | $100.00 | | |
| Direct Deposit | 021000021 | XXXXX8064 | $2,079.29 | | |

**Messages from your Employer**
Pay Period listed above applies to Overtime Only. Salary is paid current according to Pay Date.


CERIDIAN


# Kramer Levin

| Employee Name: | Yajaira V Crespo |
|---|---|
| Employee #: | 19281 |
| Employee Address: | 309 Surf Drive |
| | Bronx, NY 10473 |
| Department: | Real Estate Paralegal |
| Job Title: | Paralegal |

| Pay Date: | 5/29/2020 |
|---|---|
| Pay Period: | 5/1/2020 - 5/15/2020 |
| Deposit Advice #: | 321536714 |
| Pay Frequency: | Semi-Monthly |
| Federal Filing Status: | Single |
| Federal 2c/Extra Withholding: | No/$0.00 |
| Local Exemptions: | 0 (New York City) |
| State Filing Status: | Single (NY) |
| State Exemptions: | 0 (NY) |

| Employer Name: | Kramer Levin Naftalis & Frankel LLP |
|---|---|
| Employer Phone: | (212) 715-9100 |
| Employer Address: | 1177 Avenue of the Americas New York, NY 10036 |

|  | Current 5/1/2020 - 5/15/2020 | | | YTD As of 5/15/2020 | |
|---|---|---|---|---|---|
|  | Hours/Units | Rate | Amount | Hours/Units | Amount |
| **Earnings** | 82.95 | | **$4,011.41** | 752.62 | $36,024.63 |
| Regular | 75.83 | | $3,625.00 | 738.47 | $35,302.00 |
| Overtime 1.5 | 1.93 | | $138.63 | 1.93 | $138.63 |
| Additional Reg | 5.18 | | $247.78 | 12.22 | $584.00 |
| **Pre-Tax Deductions** | | | **$120.34** | | **$1,118.34** |
| TChek | | | | | $450.00 |
| 401K % | | | $120.34 | | $668.34 |
| **Taxes** | | | **$1,236.08** | | **$10,716.00** |
| Fed W/H | | | $566.95 | | $4,798.13 |
| FICA EE | | | $248.71 | | $2,205.63 |
| Fed MWT EE | | | $58.16 | | $515.83 |
| NY W/H | | | $208.00 | | $1,834.99 |
| NY FLIT | | | $10.83 | | $97.27 |
| NYCCityW/H | | | $143.43 | | $1,264.15 |
| | Routing # | Account # | Amount | | Amount |
| **Net Pay** | | | **$2,654.99** | | **$24,190.29** |
| Direct Deposit | 096017418 | XXXXXXXXXX3256 | $400.00 | | |
| Direct Deposit | 011001234 | XXXXXXXX3200 | $100.00 | | |
| Direct Deposit | 021000021 | XXXXX8064 | $2,154.99 | | |

**Messages from your Employer**
Pay Period listed above applies to Overtime Only. Salary is paid current according to Pay Date.

# C
CERIDIAN



| Employee Name: | Yajaira V Crespo | Pay Date: | 5/15/2020 |
|---|---|---|---|
| Employee #: | 19281 | Pay Period: | 4/16/2020 – 4/30/2020 |
| Employee Address: | 309 Surf Drive | Deposit Advice #: | 319124530 |
| | Bronx, NY 10473 | Pay Frequency: | Semi-Monthly |
| Department: | Real Estate Paralegal | Federal Filing Status: | Single |
| Job Title: | Paralegal | Federal 2c/Extra Withholding: | No/$0.00 |
| | | Local Exemptions: | 0 (New York City) |

| Employer Name: | Kramer Levin Naftalis & Frankel LLP | State Filing Status: | Single (NY) |
|---|---|---|---|
| Employer Phone: | (212) 715-9100 | State Exemptions: | 0 (NY) |
| Employer Address: | 1177 Avenue of the Americas New York, NY 10036 | | |

| | Current (4/16/20 – 4/30/20) | | | YTD (As of 4/30/2020) | |
|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | Amount |
| Earnings | 76.81 | | $3,672.01 | 669.67 | $32,013.22 |
| Regular | 75.83 | | $3,625.00 | 662.64 | $31,677.00 |
| Additional Reg | 0.98 | | $47.01 | 7.03 | $336.22 |
| Pre-Tax Deductions | | | $110.16 | | $998.00 |
| TChek | | | | | $450.00 |
| 401K % | | | $110.16 | | $548.00 |
| Taxes | | | $1,102.03 | | $9,479.92 |
| Fed W/H | | | $494.52 | | $4,231.18 |
| FICA EE | | | $227.66 | | $1,956.92 |
| Fed MWT EE | | | $53.25 | | $457.67 |
| NY W/H | | | $187.25 | | $1,626.99 |
| NY FLIT | | | $9.91 | | $86.44 |
| NYCCityW/H | | | $129.44 | | $1,120.72 |

| | Routing # | Account # | Amount | | Amount |
|---|---|---|---|---|---|
| Net Pay | | | $2,459.82 | | $21,535.30 |
| Direct Deposit | 096017418 | XXXXXXXXXXX3256 | $400.00 | | |
| Direct Deposit | 011001234 | XXXXXXXX3200 | $100.00 | | |
| Direct Deposit | 021000021 | XXXXX8064 | $1,959.82 | | |

**Messages from your Employer**
Pay Period listed above applies to Overtime Only.  Salary is paid current according to Pay Date.

CERIDIAN

# Kramer Levin

| | |
|---|---|
| **Employer Name:** | Kramer Levin Naftalis & Frankel LLP |
| **Employer Phone:** | (212) 715-9100 |
| **Employer Address:** | 1177 Avenue of the Americas New York, NY 10036 |

| | |
|---|---|
| **Employee Name:** | Yajaira V Crespo |
| **Employee #:** | 19281 |
| **Employee Address:** | 309 Surf Drive Bronx, NY 10473 |
| **Department:** | Real Estate Paralegal |
| **Job Title:** | Paralegal |

| | |
|---|---|
| **Pay Date:** | 2/14/2020 |
| **Pay Period:** | 1/16/2020 - 1/31/2020 |
| **Deposit Advice #:** | 301342086 |
| **Pay Frequency:** | Semi-Monthly |
| **Federal Filing Status:** | Single |
| **Federal 2c/Extra Withholding:** | No/$0.00 |
| **Local Exemptions:** | 0 (New York City) |
| **State Filing Status:** | Single (NY) |
| **State Exemptions:** | 0 (NY) |

| | Current 1/16/2020 - 1/31/2020 | | | YTD As of 1/31/2020 | |
|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | Amount |
| **Earnings** | 98.51 | | $4,709.20 | 210.66 | $10,070.40 |
| Regular | 96.51 | | $4,613.59 | 207.66 | $9,926.99 |
| Additional Reg | 2.00 | | $95.61 | 3.00 | $143.41 |
| **Pre-Tax Deductions** | | | $150.00 | | $150.00 |
| TChek | | | $150.00 | | $150.00 |
| **Taxes** | | | $1,509.96 | | $2,987.03 |
| Fed W/H | | | $723.52 | | $1,324.82 |
| FICA EE | | | $282.67 | | $615.06 |
| Fed MWT EE | | | $66.11 | | $143.85 |
| NY W/H | | | $253.12 | | $520.29 |
| NY FLIT | | | $12.71 | | $27.19 |
| NYCCityW/H | | | $171.83 | | $355.82 |
| | Routing # | Account # | Amount | | Amount |
| **Net Pay** | | | $3,049.24 | | $6,933.37 |
| Direct Deposit | 096017418 | XXXXXXXXXX3256 | $400.00 | | |
| Direct Deposit | 011001234 | XXXXXXXX3200 | $100.00 | | |
| Direct Deposit | 021000021 | XXXXX8064 | $2,549.24 | | |

**Messages from your Employer**

Pay Period listed above applies to Overtime Only. Salary is paid current according to Pay Date.